Prescott et als. vs Payne

## No. 11,043.

L. D. Prescott et al. vs. J. U. Payne, Jr.

J. W. Prescott et al. vs. J. U. Payne, Jr.

C. S. Tucker et al. vs. J. U. Payne, Jr.

### Consolidated.

44 650
45 492
45 1381
44 650
47 8
47 124
47 1563
44 650
48 350
48 1053
49 784
49 1439
44 650
51 809
51 953
51 977
44 650
52 1158
52 1954
44 650
d104 715
44 650
107 351
44 650
109 650

1. Notwithstanding a tax title may be *inherently* void, it is entitled to be respected and upheld as valid until judicially investigated and its nullity pronounced; and an assessing officer may act upon its *prima facie* validity in making an assessment. It is not made his duty to investigate prior assessments for the purpose of ascertaining their possible illegality.

2. Whilst it is undoubtedly true that, in respect to such persons as trace title through an assessment inherently void, such defects may be visited upon them: yet, when that title has been annulled and revoked, and the property is again sold for delinquent taxes assessed against it while it was held by the first purchaser as owner, such non-apparent defects can not be invoked to defeat the assessment and avoid such subsequent sale. Ordinarily, property should be assessed in the name of the person possessing both the legal and the equitable title, though cases may arise justifying an assessment being made in the name of one possessing only a *prima facie* title.

3. A statute which confers upon a tax collector authority to sell property sold or forfeited to the State only, does not confer upon that officer power to sell property of a delinquent tax payer in satisfaction of taxes due the State.

4. A tender of the amount of price paid at the tax sale, with 10 per cent. added, may be made at any time prior to judgment annulling tax sale; or it may be liquidated and adjusted in the decree.

5. A judgment decreeing purchaser at tax sale entitled to be placed in possession does not form *res judicata* in respect to the title, and the last defendant in the action for possession is not thereby precluded from suing for its revocation.

6. Surget vs. Newman, 42 An. 777, affirmed in respect to prescription of three years.

7. The prescription of ten years *acquirendi causa* can not be maintained unless title is accompanied with possession during the time required by law.

A PPEAL from the Twelfth District Court, Parish of Avoyelles. Barbin, Judge ad hoc.

E. J. Joffrion and W. S. Frazee for Plaintiffs and Appellees.

E. North Cullom, Jr., and E. P. Veazie for Defendants and Appellants:

A tax sale of property assessed in the name of another person than the true owner, preceded by notices given to the party assessed and not to the true owner, is absolutely null and void.

Prescription of two and three years, under the statutes in such cases, does not bar the claim of the owner for the recovery of the property. 15 An. 15, 26 An. 730; Leticia Laque vs. Vincent Boagni et al., 31 An. 912; Fischel vs. Mercier, 32 An. 705.

Prescott et als. vs. Payne.

Lands held in indivision must be assessed in the name of all the joint owners and can be sold only in name of all. 33 An. 1163, Hayes, Administrator, vs. Viator.

The names of the owners of the land should be correctly carried on assessment rolls. Guidry vs. Broussard, 32 An. 924; 29 An. 509.

The land in contest was not forfeited to the State for failure to pay taxes of 1876, and 1877, and the taxes were prescribed at date of sale to Payne, defendant..

' This prescription need not be specially pleaded. Hickman vs. Dawson, 33 An. 438, 439.

Written notice required by Act 47 of 1873 is an essential prerequisite of the tax sale, and in default of its service upon the true owner of the land the sale is null and void. Villey vs. Jarreau et al., 33 An. 291; Stafford vs. Twitchell, 33 An. 520.

When the tax collector's sale is a nullity, plaintiff is not required to tender back the purchase price to recover the property. Same case and 26 An. 189; 32 An. 1290.

The provisions of Acts 77 and 107 of 1880 were in no manner complied with, and the sale to Payne of the property in contest was null and void for that reason.

"A tax sale of property sold at a previous tax sale, which is itself shown to be null, can convey no title." Hitchcock vs. Mackin, 37 An. 209, 215.

*Irion & Lafargue* and *Thorpe & Peterman* on the same side.

The opinion of the court was delivered by

WATKINS, J. Far the greater part of them residing in States other than Louisiana, petitioners suing in their right as simple heirs of Willis B. Prescott and Adelaide M. Moore, both deceased, indifferently, demand the annulment of defendant's tax title to the property in controversy, and as ancillary thereto, the annulment of the intermediate tax title of J. W. Offut to the same property.

The plaintiffs' claim of title is, that anciently the community of Willis B. Prescott and wife owned a tract of land, which consisted of about fifteen hundred acres, part of which was in cultivation, and was called Lone Cypress plantation; and that W. B. Prescott and Wm: M. Prescott owned, in indivision, another and smaller tract of land adjacent thereto.

W. B. Prescott, dying testate, left some debts and special legacies to be paid, and bequeathed to his surviving widow, Adelaide, the usufruct of his share of his estate.

The surviving widow, finding herself so circumstanced that she could not discharge the debts and legacies and protect her usufruct as well, instituted a partition suit, whereby there was conveyed to her the share of the deceased in the community property; and in similar proceedings, conducted contradictorily with the succession of.

W. M. Prescott, she likewise acquired his interest therein. And, after paying debts and legacies, there remained on hand some $8000, which was subject to her usufruct; and his succession was closed by final account.

Subsequently Widow Adelaide Prescott became indebted to Payne, Huntingdon & Co., and in satisfaction of which indebtedness she conveyed to that firm an undivided half interest in the plantation.

Subsequently the *entire* property was adjudicated to one W. J. Offut at tax sale on the 28th of May, 1876; and thereafter said firm instituted suit and obtained judgment annulling this adjudication on the 27th of October, 1877. Subsequently J. U. Payne, Sr., as the assignee of Payne, Huntington & Co., brought suit against the heirs of Willis B. Prescott for the partition of the property held in indivision; and in pursuance of a decree of court therein obtained a partition in kind was effected on June 23, 1878, one-half being allotted to each of the two parties; the lower half to the Prescott heirs, which is the property in controversy.

Thus it appears there is some uncertainty as to the *ownership* of the land, inasmuch as it was apparently acquired by *Widow* Adelaide Prescott in 1858 in the partition of the property of the succession of her husband, and by the *heirs* of Prescott in the partition with J. U. Payne, Sr., just referred to.

But as this is not a question in this case—the suit being directed against a stranger to both the widow and the heirs of Prescott—it is sufficient that we accept the title as we find it, and deal with it accordingly. An additional fact may be taken into consideration which strengthens that conclusion, and it is, that Widow Adelaide Prescott subsequently married Leigh and died intestate, thereby investing the heirs of Prescott with the additional title they derived from her by inheritance.

As applicable to the defendant's claim of ownership under his tax title, the following statement covers the pertinent points necessary to be mentioned, viz.:

At a tax sale made on the 7th of May, 1881, the defendant became the adjudicatee of the entire Lone Cypress plantation, consisting of 1526 acres of land and improvements, and the 145 acres additional land, in consideration of $840.30 acknowledged to have been received by the tax collector in cash; and the sheriff and tax collector executed in his favor a *proces verbal* in due form, and same was duly and seasonably recorded in the proper conveyance office.

The *proces verbal* employs substantially the following recitals, viz.:

1. That the tax sale was made in conformity with and in pursuance of the provisions of Acts 47 and 107 of 1880.

2. That the property was duly advertised for and exposed to sale on the 7th of May, 1881, at the court house door in the town of Marksville, parish of Avoyelles.

3. That the property consisted of 1526 acres of land known as the Lone Cypress plantation, situated on Bayou Bœuf, and forming a part of sections 9, 21, 22, 23 and 24, township 2 south, and of range 2 east; and of 145 acres in section 3, township 2, of range 4 east.

4. That said properties were seized "for the payment of *taxes due by William J. Offut*, Willis Prescott agent of Mrs. Leigh, and the heirs of Willis B. Prescott, deceased, *as owner thereof*, according to the tableau and assessment rolls for the years 1876, 1877 and 1878."

5. That at the said sale the defendant being the last and highest bidder, the property was adjudicated to him at the price of $840.30.

6. That the amount of taxes due the State for these years aggregated $468.15, and those due the parish aggregated $316.96.

7. That the right of redemption was reserved, to be exercised conformably to law.

Subsequently, on the 9th of August, 1882, the defendant instituted proceedings against Widow Adelaide Leigh, *née* Moore, to recover possession of the property thus adjudicated to him, in pursuance of the provisions of Act 107 of 1880, alleging "that (*in*) *so far as he has been able to ascertain*, Mrs. Adelaide Moore, widow of John F. Leigh, was owner of said property at the time of said tax sale." And on the 6th of May, 1883, there was a final judgment rendered in favor of the plaintiff (defendant here) decreeing him entitled to be placed in possession of said property, and directing the sheriff to seize same and place him in possession thereof.

From this judgment an order of appeal was taken, but it was never prosecuted; and it became final at the date of its rendition and signature.

Nothing further appears to have been done in the premises until June 11, 1888, when a writ of possession issued under the aforesaid judgment, and thereunder the defendant J. U. Payne, Jr., was placed in possession on the 10th of June following.

The grounds of nullity set out in the plaintiffs' petition are quite

numerous, though they are substantially the same in each of the three consolidated causes.

Charges of nullity are not only preferred against the tax title of defendant, but against that of Offut as well; for in the prayer of the petition there is a specific claim made for the revocation of the latter, as well as of the former.

But we are at a loss to perceive how we are to entertain such prayer, or could be expected to entertain it, in view of the plaintiffs' distinct judicial admission of the revocation of Offut's title, at the suit of J. U. Payne, Sr., in 1877, and the subsequent partition of the lands between Payne and the heirs of W. B. Prescott, under whom they claim.

Neither plaintiffs or defendant make any claim of title under Offut, as adjudicatee, and there is no necessity to review it.

While not specifically so alleged, yet it is evident that it was plaintiffs' intention, as well as it is their present theory, that because of certain alleged nullities in the tax title of Offut, the ownership of the property was not vested in him, and hence assessments made of the property as his, in 1876, 1877 and 1878, were illegal and defective, and can not support the subsequent adjudication of the property to defendant.

This theory is distinctly announced in the brief of counsel for Caroline Tucker et als., and in support of it they cite Gibson vs. Hitchcock, 37 An. 209.

Considering that question preliminarily, we find that in 1877—contemporaneously with the sale of Offut—the property that was the subject of the litigation in that case, was adjudicated to Hitchcock, in the enforced collection of taxes of prior years; and, pending litigation which ensued, the property was again advertised for sale for the delinquent taxes of 1877 and 1878, and adjudicated to Mackin. Thereupon the legal representatives of Hitchcock, claiming ownership under the *former* tax sale, demanded the right to redeem the property from Mackin adjudicated at the *latter* tax sale. In answer the defendants in the redemption suit set up certain badges of nullity in the Hitchcock tax title, and among the number, that the property was not sufficiently described; and upon this last ground plaintiffs' title was held to be void.

There can be no serious question as to that being a proper issue for a suit in redemption, or that the judgment therein rendered was a correct one.

But it is equally true that, as matter of law, the Hitchcock title was apparently a good one, and entitled to be respected and upheld as such until judicially investigated and declared null and void. This being the case, and this principle being applied to the Offut title, it seems manifest that the assessing officer was justified in making the assessment according to the title. It was certainly not his duty to institute an examination into prior assessments to ascertain the possible illegality of the sale to Offut; and had he made such an examination and found what, in his opinion, was evidence of error or illegality in such assessment, it would have been unquestionably out of his power and beyond his capacity to so decide, possessing no judicial power.

Accepting this view as correct, we are of the opinion that any alleged errors in the title of Offut could not possibly affect an assessment made in his name during the time the property stood upon record in his name.

If the defendant were claiming *ownership through the Offut title*, directly or indirectly, its nullities could be visited upon him; but inasmuch as the fact confessedly is that the Offut tax title was judicially annulled at the suit of J. U. Payne, Sr., in 1877, and the rightful owners reinstated in possession, and thereafter the property was partitioned, and the portion that was allotted to the Prescott heirs is claimed by the plaintiffs in this suit—they are unavailing.

While it is true that in 1881 the defendant purchased the property *for the taxes of Offut*, which were assessed to him as owner during the period of time he held under his tax title, and prior to his divestiture at the suit of J. U. Payne, Sr., and the reinvestiture of title in Payne, Sr., and the heirs of Prescott; yet there is a recital in his tax title that, at time of the sale, the property was in Mrs. Leigh and the heirs of W. B. Prescott as owners; that is to say *cum onere*.

The theory of plaintiffs, further amplified, is that the nullity of the Offut title resulted in the nullity of the subsequent assessment in his name; and the nullity of the title and assessment of Offut necessarily draws after it the nullity of the defendant's title. 2 Desty on Taxation, 628 and 629; 33 An. 816; 39 An. 205, 206.

The principle involved is very much the same as that involved in Insurance Company vs. Levi, 42 An. 432, in which we dealt with property, the title to which had been suffered to remain in abeyance during the several years, during which the assessments complained

of had been made; and we held that if it suited the convenience of the parties in interest to acquiesce in this situation, they "should not expect the city to lose her revenue on account of a possible defect in the assessment."

Ordinarily, it is not necessary that property should be assessed in the name of one possessing both the legal and equitable title, in order that the assessment be legal and valid; for cases may arise justifying an assessment being made in the name of one possessing only *prima facie* title, and such an assessment would serve as the foundation of a valid tax title.

If assessing officers could not assess other than those possessing *absolutely perfect* titles, a great deal of property would escape taxation entirely.

Recurring to the question of the alleged nullity of the defendant's tax title, there is but one ground that needs consideration, and that is necessarily fatal to it; and it is, that the tax sale was made in conformity to the provisions of Acts 47 and 107 of 1880 for the *collection of taxes* that were assessed in 1876, 1877 and 1878; and that said sale was illegal because Act 77 of 1880 relates to the assessment and *collection of the revenues* of that year, and had no reference to antecedent taxes; and Act 107 of 1880 relates exclusively to the sale of *property that had been theretofore forfeited to the State* for the nonpayment of taxes; and the averment of the petition is, that the property in question had never been forfeited to the State.

In Surget vs. Newman, 42 An. 781, we had this particular statute under consideration as applicable to a plea of three years' prescription under Act 105 of 1874, and in the course of our opinion said:

"This statute was doubtless enacted for the purpose of putting in force the provisions of Art. 1 of the ordinance for the relief of delinquent taxpayers, but it evidently relates only *to the sale of property forfeited or sold to the State* for delinquent taxes and licenses. This appears from a casual inspection of the act; and we have frequently so construed it. It is equally obvious that a statute which directs and requires a tax collector to sell *property forfeited or sold to the State only* does not confer upon that officer power or authority to sell *property of a delinquent taxpayer* in satisfaction of taxes *due the State.*

"It was this particular deficiency in the Act of 1880 which necessitated the passage of Act 98 of 1882, Sec. 1 of which requires the

tax collector to advertise for sale property which had theretofore been *forfeited* to the State for unpaid taxes; property which had been *sold* to the State for unpaid taxes, and ' property upon which any taxes (were) *due* to the State * * prior to January 1, 1888.' Therefore, if the tax collector did *proceed under that law, to enforce the collection of taxes due the State prior to the 1st of January, 1880,* * * it can not be said of his adjudication that it is a title to * *, property purchased at tax sale *under and by virtue of any law of this State,"* etc.

Applying the principle of law announced in that case to the tax title under examination, it is evident that it can not stand the test. The *proces verbal* shows upon its face that the sale was made, not of property which had been forfeited to the State, but of property of Mrs. Leigh and the Prescott heirs, for the purpose of collecting taxes that were assessed against it in 1876, 1877 and 1878, when Offut was the proprietor. It further shows that the sale was made in pursuance of Acts 77 and 107 of 1880, indifferently.

It is further manifest that the tax collector, in acting under these laws, proceeded without warrant or authority, and that the sale was absolutely void on that account, and confers no title on the defendant.

The exceptions of the defendant are peremptory in character and may be summarized as follows, viz.:

1. Failure of the plaintiffs to make a tender of the price paid at the sale, as a condition precedent to the institution of suits to annul the title.

2. *Res adjudicata* founded upon the suit of defendant against Mrs. Leigh to be put in possession of the property sold, and the judgment thereon pronounced.

3. The prescription of three and five years.

As a defence, the plea of ten years' prescription *acquirendi causa* is urged as a muniment of title.

In the alternative, claim is made in reconvention for the restitution of the purchase price, taxes paid since sale, and the value of improvements and repairs.

*a.* In State of Louisiana vs. Cannon, 44 An. —, we recently decided, upon a thorough examination of authority, that "the plea of want of previous tender, as a condition precedent to the institution of a suit to annul a judicial sale, is not applicable to tax sales. The

Constitution declares that no sale of property for taxes shall be annulled for any informality in the proceedings until the price paid, with 10 per cent. interest, be tendered to the purchaser; and that provision has been construed to mean that tender may be made at any time prior to final judgment, or that the price may be liquidated and adjusted in the judgment."

Breaux vs. Negrotto, 43 An. 427.

*b.* The suit and judgment referred to and relied upon as supporting the plea of *res adjudicata* was not a proceeding which involved the *title* of the defendant. The only question that was therein adjudicated was *possession* and not *ownership*, and of which the tax title furnished the only evidence.

Notwithstanding the judgment decreed the defendant entitled to be placed in possession, it left the defendant in that suit free to sue for the revocation of the title upon which the judgment is founded.

*c.* The prescription of three years is not good, for the reason we assigned for refusing to apply it in Surget vs. Newman, 42 An. 777, viz.:

" It is clear to our minds that, in applying the bar of the statute to an action to invalidate the title to property purchased at tax sale, it is our province and duty to see to it that the sale was made under and by virtue of *some* law of the State which authorized the proceedings, and our conclusion is, that the title in question fails to disclose the existence of any statute authorizing *such* a sale, and, therefore, it can not be said to be a title to property purchased at a tax sale *under and by virtue of any law of this State*, and the prescription invoked   *   *   is not available to the defendant," etc.

*d.* The prescription of five years only applies to informalities in sale proceedings, and not to such absolute and incurable nullities as are found to exist in the instant case.

*e.* The plea of ten years' prescription is not well grounded, because the title of defendant was unaccompanied by *possession*, which is one of its essential elements.

R. C. C. 3479.

That article requires that possession shall have continued " during the time required by law;" and Art. 3487 requires " that the possessor shall have held the thing in fact and in right;" and same article further declares " that the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal," etc.

In this respect the facts are that the property was adjudicated to the defendant on the 7th of May, 1881. On the 9th of August, 1882, defendant, as adjudicatee, instituted suit against Mrs. Leigh for possession, and on the 6th of May, 1883, there was a final judgment rendered in his favor; but nothing appears to have been done in the way of executing it until the 16th of June, 1888.

It is quite evident that defendant has not had that possession which is requisite to sustain the plea of ten years' prescription.

The judge *a quo* was of opinion and decided that the rents and revenues were the just equivalent of the taxes, repairs and price paid, and accordingly held that one was compensated by the other; and we find no sufficient reason to change his decision or decree.

Judgment affirmed.

Mr. Justice Fenner recuses himself on the ground of relationship to the defendant.