Marti vs. Wall.

---

No. 13,113.

ANTONIO MARTI vs. MARY AGNES WALL.

SYLLABUS.

It appearing from the evidence that an heir was owner of one-half interest, notwithstanding the fact that the property, when assessed, was, technically, that of the succession of an ancestor, a sale will be upheld with respect to that interest under an assessment against the heir, as owner of the whole.

IN RE Antonio Marti applying for *certiorari,* or writ of review, to the Court of Appeals, Parish of Orleans.

*James Wilkinson* and *Henry J. Rhodes* for Petitioner.

Respondent judges for themselves.

*Benjamin Ory* for Mary Agnes Wall, Defendant.

Submitted March 22, 1899.
Opinion handed down May 1, 1899.

The opinion of the court was delivered by

WATKINS, J.   In the original suit plaintiff declared upon a tax title made in pursuance of Act 80 of 1888, and prayed to be recognized as owner, and placed in possession of the property; and, in the alternative that his demand for the property be rejected, his prayer is for the reimbursement of the purchase price, and the taxes since paid by him.

The answer of the defendant is, that she was the owner of only an undivided interest in the succession of her mother, and that the tax title is void, based as it is upon an assessment in the name of one not the owner; and, further, because notice of sale was not given in compliance with Article 210 of the Constitution of 1879.

I.

The respondents found, and so reported in their opinion, that defendants's mother purchased the property on May 13th, 1871, and died on the 20th of July, 1877, possessed of title; and that her succession was duly administered by the appointment of an administrator on the 26th of June, 1878.

That he subsequently died, and no successor has since been appointed; hence, the succession remains unsettled.

That at her death, plaintiff's mother left four heirs surviving her, one of whom was the plaintiff; and that the latter purchased the undivided interest of one of her brothers on the 6th of July, 1878, and, also, subsequently, inherited one-third interest in the undivided interest, or share of another brother who died—thus constituting her

the undivided owner of eight-twelfths of the entire estate and succession of her mother.

That, in this condition, the title of the properety has since remained, consequently an assessment of the real property in question in the name of the defendant alone was erroneous, and a tax adjudication thereof to the plaintiff thereunder a nullity.

That, in thus deciding, the respondents rested their opinion on Martin vs. Southern Athletic Club, 48th Ann., 1051, and Succession of Lacroix vs. Lumber Company, 49th Ann., 1445.

## II.

On the question of the defendant's alternative demand for reimbursement, the respondents held the plaintiff not entitled to recover of defendant, because she is not the owner of the particular property sought to be taxed—title thereto being in the succession of the deceased.

That any claim which may exist in favor of plaintiff for the reimbursement of the money that he has expended, may be against the succession, but not against the plaintiff as an heir thereof.

## III.

From the record it appears that the plaintiff acquired title from Joseph P. Molinoz, on August 17th, 1893; that he acquired title from James C. Galvey on June 13th, 1893, and that he acquired from the State of Louisiana, on the 25th of October, 1889, the State being therein represented by C. Harrison Parker, tax collector.

The act of sale from the State to the last named purchaser declares that the sale was made in pursuance of the authority in him vested by Act 80 of 1888, after having advertised same for sale according thereto—same being theretofore sold and adjudicated to the State for the delinquent taxes of 1887, which had been duly recorded according to law in the book of mortgages.

The description of the aforesaid property is therein given by the municipal number of the lot, as well as by reference to the square in which same is situated, and the streets by which same is bounded; and it contains this further statement, namely: "Which said property "is more perfectly described in a certain act of sale from James

" Joseph Wall to said Mary Agnes Wall, * * * dated July 6th, " 1878, etc."

It further appears, that, on the 13th of July, 1888, in pursuance of the provisions of Act 96 of 1882, the State Tax Collector adjudicated the aforesaid property to the State for the delinquent taxes of the year 1887; and that said property was advertised and sold under an assessment which was made in the name of Mary Agnes Wall.

The defendant testified in the case as a witness upon her own behalf, and we make the subjoined extracts from her testimony, viz.:

"Q. Where do you live?

"A. No. 1835 Palmyra street.

"Q. How long have you resided there?

"A. Over thirty years.

"Q. Between what streets is it?

"A. Roman and Derbigny.

"Q. Is that the property sued for—on which you reside?

"A. Yes, sir.

"Q Who is Mrs. Julia Wall?

"A. My mother.

"Q. When did she die?

"A. In 1877.

"Q. How many children did she have in all?

"A. Four.

"Q. What are their names?

"A. Thomas J. Wall, Mary A. Wall, Patrick J. Wall, and James J. Wall.

"Q. Are any of them dead?

"A. Yes, sir; Thomas J. Wall is dead.

*          *          *          *          *

"Q. Is James J. Wall living?

"A. Yes, sir.

"Q. Where does he reside?

"A. No. 1835 Palmyra street.

"Q. The property involved in this case?

"A. Yes, sir.

"Q. You say you have lived there how long?

"A. Some thirty odd years.

"Q. You are one of the heirs of your mother?

"A. Yes, sir.

Marti vs. Wall.

"Q.   And James Wall, also—what is the name of the absent one?

"A.   Patrick J. Wall.

\*          \*          \*          \*          \*

"Q.   Your other brothers, except James J. Wall, have never sold their interests to you?

"A.   No, sir; I only bought my brother James' interest.

"Q.   So you are not the sole owner of this property to-day?

"A.   No, sir.

\*          \*          \*          \*          \*

"Q.   You say that you have two brothers living?

"A.   No, sir; one brother living now.

"Q.   What is his name?

"A.   James J. Wall.

"Q.   This is the gentleman sitting here?

"A.   Yes, sir.

"Q.   All the others are dead?

"A.   No, sir; I have a brother away from here, that I have not seen for twenty years; I don't know whether he is dead or alive.

"Q.   You have not heard from him for twenty years?

"A.   No, sir; not for twenty years.

"Q.   When did you buy out the interest of your brother, James J. Wall?   \*   \*   \*

"A.   I do not remember exactly the date.

"Q.   About how long?   Wasn't it on July 6th, 1878?

"A.   I believe it was.

"Q.   That was eighteen years ago?

"A.   Yes, sir.

"Q.   Now, in the last twenty years, you say you have not heard from your other brother?

"A.   No, sir.

"Q.   You don't know whether he is alive or dead?

"A.   No, sir; I do not.

"Q.   So far, though, as any other heir is concerned in the State of Louisiana, you stand as the owner of that property, and have owned it ever since 1878; I may say, so far as any other heir of your mother is concerned in the State of Louisiana, you have owned the property?

"A.   Well, it was part of my mother's succession.

"Q.   You bought out the other heir?

"A.   Yes, sir; my brother, Jim.

Marti vs. Wall.

"Q. And no other heir has had any interest in it?

"A. No, sir.

"Q. *Don't you know that you are the only person who is, and was, interested in the property in 1887? Don't you know that you have been the sole owner of that property ever since 1878, irrespective of anybody else?*

"A. Yes, sir."

Again:

"Q. Don't you own any other piece of property besides this?

"A. Not that I know of.

"Q. *Wasn't there another piece of property that belonged to the succession of your mother in which you were interested?*

"Mr. Ory objects as irrelevant.

"Q. Wasn't there another piece of property that belonged to your mother?

"A. *Yes, sir; a double cottage on Palmyra street.*

"Q. That you bought, also?

"A. *Yes, sir.*

"Q. At the time of his death, was he the administrator of the estate of Julia Wall?

"A. Yes, sir."

We make the subjoined extract from the testimony of James J. Wall, viz.:

"Q. Who is Thomas J. Wall?

"A. He was my brother.

"Q. When did he die?

"A. About four years ago.

"Q. Who was Julia Wall?

"A. My mother.

"Q. Also the mother of Thomas J. Wall?

"A. Yes, sir.

"Q. You are living with your sister in the property involved in this controversy?

"A. Yes, sir.

"Q. Where was Thomas J. Wall living?

"A. He lived there until he died.

"Q. That was about four years ago?

"A. About four years ago; yes, sir.

"Q. The succession of your mother, so far as you know, has never been settled?

"A.   No, sir.

"Q. Did Thomas J. Wall leave any children?

"A.   No, sir; he never was married.

＊          ＊          ＊          ＊          ＊

"Q. You don't know whether your absent brother is living or not?

"A.   No, sir; I have not seen him since about 1874; that is, parties have seen him, but there is no definite proof whether he is dead or alive, etc.   ＊   ＊   ＊

"Q. You sold out your interest to your sister in the estate of your mother?

"A.   Yes, sir.

"Q. Your sister is the sole owner; she bought you out?

"A.   Yes, sir; she bought me out."

From the foregoing evidence we gather the following summary of facts, viz.:

That Julia Wall, mother of plaintiff, died in the city of New Orleans, possessed as owner of the property in controversy, and left surviving her four children.

That on July 6th, 1878, the defendant purchased the undivided one-fourth interest of her brother, James J. Wall, as an heir in his mother's estate and succession—the property in question being particularly specified and described.

That James J. Wall, and his sister, the defendant, have resided upon the property since that date, continuously.

That another brother, Thomas J. Wall, also resided with his aforesaid brother and sister on said property, until the time of his death, which occurred about four years prior to the trial of this suit; and, as he died without issue, the defendant inherited two-thirds; that is to say, two-twelfths of the whole estate, thus constituting defendant owner of eight-twelfths of the whole estate.

That Patrick J. Wall, the other brother, was and is an absentee, whose whereabouts is and has been unknown for about twenty-five years, and he is still vested with an undivided interest in the estate of his mother, to the extent of four-twelfths thereof.

That Thomas J. Wall qualified as administrator of his mother's succession on the 26th of June, 1878, about one year subsequent to his mother's death, and continued to discharge the duties thereof, up

to the date of his death—the succession having been actually under administration for a period of near fifteen years, at the time of his death.

That the property in question was advertised, sold and adjudicated to the State on the 13th of July, 1888, in pursuance of the provisions of the current revenue law of 1882, for the alleged delinquent taxes of the year 1887; and which taxes were assessed against the property in dispute as that of the defendant, Mary Agnes Wall, individually.

On this state of facts, the question propounded by the relator's application is, whether the judgment and decree of the respondents departed from the established jurisprudence of this court, in declaring the tax adjudication to the State was an absolute nullity.

In Martin vs. Southern Athletic Club, 48th Ann. 1051, this court said of a similar suit, in regard to a similar title, viz.:

"We have held that, ordinarily, it is not essential that property should be assessed in the name of one possessing both the legal and the equitable title in order that the assessment be legal and valid.

"Prescott vs. Payne, 44th Ann. 650.

"But there must be a *prima facie* title to serve as a foundation of a valid tax sale. *Id.*

"There must be on record some evidence to show that the original owner voluntarily parted with title, or that there were proceedings against him which apparently divested his title, such as were in evidence in the case cited, and the authorities therein referred to.

"The assesment was not in the name of the owner, as shown by the records, and was, therefore, absolutely null and void.

"No valid tax sale can be predicated upon an absolutely null and void assessment."

The proof discloses that the assessment under which the sale complained of was made was against the defendant as her sole and exclusive property, when, in fact, same was ostensibly the property of the succession of her mother under administration by her brother at the time; and that it remained under administration for several years thereafter, and was under administration at the time of the sale and adjudication to the State.

In point of fact, the plaintiff was heir to three-twelfths interest in the *succession*, and had purchased the interest of another heir of three-twelfths—thus constituting her owner of an undivided one-half interest therein.

That was the *status* of the title at the date of the assessment in 1887, and at the date of sale in 1888.

At that time the defendant, and two of her brothers lived upon the premises, and occupied the residence. A few years afterward, the administrator died, and the defendant inherited from him two-thirds of his succession, to-wit, two-twelfths interest in their mother's succession.

Subsequently, the defendant and one brother continued to reside on the premises, and the other living brother remained abroad, and his whereabouts were unknown.

But, plaintiff's counsel cite and strongly rely upon our opinion in Russell vs. Lang, 50th Ann. 36, as being exactly applicable to the instant case.

In that case this statement occurs, namely:

"The property was assessed in the name of J. R. Russell, for the years 1880 and 1885, inclusive, and described as one-half of square No. 35, Greenville, lots 11 to 20—Oliver, Wall, Lowerline and Pine streets. This description was not inadequate, and the assessment in the name of Russell was the assessment in the name of one of the owners in indivision. The assessment cannot be held an absolute nullity. It was sufficient as to the interest of Russell in the property which was an undivided half, and if the taxes due by his interest were not paid, that interest (an undivided half) could be legally sold under an assessment which placed the whole property in the name of Russell. An assessment of the entire property correctly described, in his name, while error as to the whole, was not error as to his half, on the principle that the greater includes the less."

While technically, the defendant was not the owner in her own right of one undivided half-interest in the property itself, she was practically so, to all intents and purposes.

She had been in the undisturbed possession and use of the property, according to her own statement, for over twenty years, apparently exercising dominion and control over same as owner; and notwithstanding the succession of her mother had been under administration by her brother for a period of time equally great, same was, to all appearances, a nominal administration, merely, and had been permitted to lapse by the non-performance of the duties incumbent upon him by law.

The foregoing facts, in our opinion, bring this case strictly within

the principle announced in Russell vs. Lang, and to which opinion we adhere.

While not exactly parallel to the instant case, the case of Hood vs. City, 49th Ann. 1461, is very similar.

On the question of the want of due notification of the sale, there is little to be said, for while the defendant states her recollection to be, that she received no notification, the tax records and the evidence of a witness who is fambiliar therewith, support the recitals of the act of sale.

The sale should have been annulled, only with respect to one-half, and sustained as to one-half; and, in this respect, the judgment of the respondents court should be amended, so as to conform to the opinion of this court, as expressed in Russell vs. Lang, *supra,* and the views and opinion herein expressed.

It is therefore, ordered and decreed, that the judgment and decree of the respondents, the Court of Appeal of the parish of Orleans, in the cause entitled Antonio Marti vs. Mary Agnes Wall, be so amended as to decree the sale of the property in dispute null and void as to one undivided half interest, and good and valid as to the other undivided one-half interest; and it is further ordered and decreed that the judgment and decree of the District Court be, likewise, amended, and in all other respects affirmed.

It is finally ordered and decreed that all costs be taxed against the defendant and appellee.