Statement of the Case.
MONEOE, J.
Plaintiffs brought suit, in the district court of the parish of Natchitoches, to recover the purchase price of, and taxes paid on, certain lands’ adjudicated to them at tax sales, and the titles to which, as they allege, proved to be bad, because the property owed no taxes, or was doubly assessed, or was public land, or was outside the parish. Defendant denies that it was a party to the sales, or had any control over them, or is bound for the restitution demanded, and alleges that plaintiffs-bought at their own risk, listed the property for assessment as their own, and are es-topped to demand the return of the price and the taxes voluntarily paid by them; and they plead the prescription of three years.
The case was tried upon admissions reading as follows:
“First. Plaintiffs herein bought various properties, at tax sales, at various times, in the parish of Natchitoches, from the collector of state and parish taxes of said parish, and have paid taxes for various years on said properties, all, as shown in detail, by the exhibits, hereto annexed as part hereof, marked, respectively, Al to A7, inclusive; B1 to B7, inclusive; Cl to 07, inclusive; D1 to D7, inclusive; El to E7, inclusive; FI to F7, inclusive; Gl to G7, inclusive — which tax sales were all null and void, some, because the property belonged to the United States or state, some because the property was situated outside of Natchitoches parish, and some because the taxes for which the property was sold had been paid by the true owner, there being dual assessment, but, said sales were made in good faith and the taxes received by the parish in good faith.
“Second. That the amounts received by the parish out of the purchase price of said properties, and for taxes paid to the parish since, on same, amount to $1,308.24, as shown by exhibits hereto annexed, as part hereof, marked, respectively, AA, B, C, D, E, P, and G.
“Third. That the refund of $269.41 obtained by plaintiffs, and mentioned in the petition, was obtained for other properties than those mentioned herein.
“Fourth. That, as to all of said properties which were situated in the parish of Natchi *286 foches and belonged to private individuals, the true owners of the same paid taxes to the state and parish for the various years for which plaintiff also paid, said properties being assessed to said true owners as well as to plaintiffs.
“Fifth. That the taxes so paid by Lisso & Bro. on said properties were paid voluntarily and without any coercion or representation by the parish officials.
“Sixth. Lisso & Bro. voluntarily handed to the assessor of the parish of Natchitoches a list of all said properties, together with other property owned by them, for assessment and taxation to themselves. They never attempted to have the assessments corrected or reduced by any legal steps whatever, and they voluntarily paid the taxes assessed against themselves, thereon, from year to year, without any legal coercion whatever, but believing that their tax titles were good and valid to the aforesaid properties.
“Seventh. Said assessments were made and the taxes paid thereunder by Lisso & Bro. through no representation or solicitation or inducement on the part of any of the officials of Natchitoches parish.
“Eighth. The police jury of the parish of Natchitoches has made no provision whatever for the payment of the sums sued for herein and has declined to adopt an ordinance recognizing the existence of said indebtedness or making any provision for the payment thereof.”
Opinion.
The learned counsel for plaintiffs predicate their asserted right of recovery upon the articles of the Civil Code (articles 2301, 2302, and 2303) regulating the rights of parties with respect to payments made and received in error; and, in so doing, they lose sight of the fact that laws regulating the collection of taxes are sui generis, and constitute a system to which the general provisions of the Civil Code have, ordinarily, little or no application. State v. Viator et al., 37 La. Ann. 735; Reed v. Creditors, 39 La. Ann. 123, 1 South. 784.
Article 233 of the Constitution provides that, save in certain cases, the owner, upon recovering property sold for taxes, shall reimburse the purchaser; but our attention has not been called to any provision of the Constitution, or any statute, which imposes upon municipal corporations the obligation to reimburse either the price of property so sold, and from which the purchaser is evicted, or taxes voluntarily paid.
In Lindner v. City of New Orleans, 116 La. 373, 40 South. 736, it was held that:
" A tax sale, in the absence of special legislation to the contrary, is generally held to be subject to the rule caveat emptor, and the purchaser assumes the risk of all illegalities and irregularities in the proceedings of which, as they are open to his inspection he is presumed to have notice. He is therefore, without recourse against the municipality atv the instance of which the sale is made, and which, not pretending to sell its own property, warrants neither the title nor the return of the price"-citing 2 Cooley on Taxation (3d Ed.) pp. 919, 921, 1512; Desty on Taxation § 850; Black on , Titles, c. 30, § 403; Hamilton v. Valiant, 30 Md. 139, Pennock v. Douglas County, 39 Neb. 293, 58 N. W. 117, 27 L. R. A. 121, 42 Am. St. Rep. 579; Budge v. City of Grand Forks, 1 N. D. 309, 47 N. W. 390, 10 L. R. A. 165.
The case thus cited is reported in 7 Am. & Eng. Ann. Cas., p. 919, with the following note, to wit:
“The holding of the reported case, to the effect that a tax sale, in the absence of special legislation to the contrary, is subject to the rule caveat emptor, and the purchaser is without recourse against the municipality under the authority of which the sale is made, where the sale is invalid, is supported by the following authorities.”
And then follows a list of decisions by the federal courts and by the courts of last resort of 25 of the states of the Union, including California, Colorado, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Pennsylvania, South Carolina, Texas, and Virginia. The note also contains several excerpts, from which we take the following:
In Hamilton v. Valiant, 30 Md. 139, it was said:
“Although cases are numerous in which titles derived from tax sales have been declared to be defective because of irregularities, we know of no case in which the attempt has been made to hold the officer making the sale responsible in damages. There seems to have been a general acquiescence in the doctrine that no such liability exists, and we had not supposed that any doubt was entertained upon so plain a proposition. A purchaser at a tax sale, buying, as he does, property from a person who is not the owner of it, comes strictly and rigidly *288 within the rule caveat emptor. While his title depends mainly upon the regularity of the proceedings of the officer who makes the sale, he is bound to inquire whether he has acted in conformity with the law from which his power is derived. In this case the duties of the collector, as to notice and other matters essential to the validity of the tax sale, were distinctly prescribed, and, in regard to them, a purchaser had the easy means of being fully informed. If he acted without proper inquiry and care, it was his own fault, and, buying, upon the faith of his own judgment, he must abide the consequences.”
In Lynde v. Melrose, 10 Allen (Mass.) 49, a tax title having been set aside for illegal assessment, the ejected purchaser and his vendee brought suit against the town to recover the amount paid, together with costs and expenses of the action of ejectment.
The court said:
“This action is certainly a novel impression, * * * no precedent for maintaining such a suit is found, and the plaintiff’s counsel rests his argument solely upon the ground that the defendants have received the amount of the tax without consideration. If this be true, it is not easy to see how the plaintiffs get a joint right of action, nor how the defendants could be responsible for more than the sum $1.39, the amount of the tax which would go into the town treasury. But there is a plain distinction between the right of a person to recover from the town the amount of a tax unlawfully assessed upon him, and the claim of a purchaser under a collector’s deed, whose title proves defective. The town is not a party to the deed. The purchaser is a mere volunteer in the payment of the tax. He has the same means of knowing whether it is legally assessed that the town has. He buys a title without warranty, except such covenants as he takes from the collector, and he must rely upon them. Beyond those covenants, his deed is in the nature of a mere quitclaim, for which he has paid what he thought the claim was worth. 1-Iis speculation may prove very profitable or wholly unproductive, but no one has taken his property without his consent, or with any contract, expressed or implied, to reimburse him if his bargain proves a losing one.”
In McCormick v. Edwards, 69 Tex. 108, 6 S. W. 33, it was said:
“After a careful research we have found no case in which a purchaser at a void tax sale has, without the aid of a statute, been permitted to recover even the taxes lawfully assessed upon the land and paid by the purchaser. It would be equitable that he should at least recover the taxes which the landowner ought to have paid and which he failed to pay. Many states have, accordingly, passed statutes in regulation of this subject and giving the relief indicated ; and, so far as we have been able to discover, whenever this relief has been given or sanctioned by a court of last resort, it has been by virtue of statutory law.”
The provision of article 233 of the Constitution of Louisiana, to which we have referred, reads:
“No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent, per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser; provided, this shall not apply to sales annulled on account of taxes having been paid prior to the date of sale, or dual assessments.”
Whilst, therefore, in cases where the owner should have paid the tax and has failed to do so, our law thus makes provision that he shall refund the price and taxes paid by the tax purchaser, with interest, where the property is sold for a tax which the owner has already paid, the tax purchaser cannot look to him for reimbursement, and, as was said by the Supreme Court of Maryland, “buying upon the faith of his own judgment, he must abide the consequences.” With regard to the right to recover taxes which have been paid to municipal corporations, Judge Dillon states the rule to be as follows:
“Actions against a municipal corporation to recover back money upon the ground of the illegality of the tax or assessment are, upon prin'ciple and the weight of authority, maintainable when, and, in general, only when (if there be no statute enlarging the liability) the following requisitions coexist: (1) Authority to levy the tax, or to levy it upon the property in question, must be wholly wanting, or the tax itself, wholly unauthorized; in which cases, the assessment is not merely irregular, but absolutely void. (2) The money sued for must have been received by the defendant corporation, and received by it for its own use, and not as an agent or instrument to assess and collect money for the benefit of the state, or other public corporation or person. And (3) the payment by the plaintiff must have been made upon compulsion, as, for example, to prevent the immediate seizure of his goods or the arrest of his person, and not voluntarily. Unless these conditions concur paying under protest will not, *290 without statutory aid, give a right of recovery.” Dillon’s Municipal Corporations (4th Ed.) vol. 2, p. 1145, § 940.
It is true that our predecessors in this court have held that taxes, though paid voluntarily, might be recovered where the property was exempt from taxation. Catholic Society v. City, 10 La Ann. 75. Upon the other hand, it has been held that, though the ordinances under which taxes paid were found to be unconstitutional or illegal, there was, nevertheless, a natural obligation on the part of the taxpayer sufficient to preclude recovery. Campbell v. City, 12 La Ann. 34; Factors’ & Traders’ Ins. Co. v. City, 25 La. Ann. 454; Fuselier v. St. Landry Parish, 107 La. 221, 31 South. 678.
In the instant case, it is admitted that plaintiffs, “voluntarily, handed to the assessor of the parish of Natchitoches a list of all said properties, together with other property owned by them, for assessment and taxation to themselves; they never attempted to have the assessments corrected or reduced by any legal steps whatever, and they voluntarily paid the taxes assessed against themselves thereon, from year to year, without any legal coercion whatever, but believing that their tax titles were good and valid to the aforesaid properties.”
It is plain that the assessors had no capacity to determine, as between apparently conflicting titles, which was the best, and it is well settled that an assessment in the name of him who appears, upon the record, to be the owner, is good. Prescott et al. v. Payne, 44 La. Ann. 650, 11 South. 140; Augusti v. Bank, 46 La. Ann. 530, 15 South. 74; Michel v. Stream, 48 La. Ann. 341, 19 South. 215; Marti v. Wall, 51 La. Ann. 953, 26 South. 44; Adolph v. Richardson, 52 La. Ann. 1158, 27 South. 665; Rovens V. McRobinson, 117 La. 735, 42 South. 251.
As, therefore, plaintiffs appeared as the owners, of record of the property in question and as they, from year to year, made sworn returns to the effect that they were the owners, and paid the taxes assessed to them in that capacity, it follows that they were bound by the assessments, and that they also incurred a personal liability predicated thereon. Carter, Congreve et al. v. City, 33 La. Ann. 816; Reed v. Creditors, 39 La. Ann. 115-125, 1 South. 784; Palmer v. Board of Assessors, 42 La. Ann. 1122, 8 South. 487; Succession of West, 44 La. Ann. 277, 10 South. 806; Succession of Mercier, 42 La. Ann. 1143, 8 South. 732, 11 L. R. A. 817; People’s Homestead Ass’n v. Garland, 107 La. 476, 31 South. 892.
The law makes specific provision with respect to the time and manner in which assessments may be corrected, whether by cancellation, reduction, or increase, and this court has on more than one occasion found itself unable to afford relief to complaining taxpayers because of their failure to comply with those provisions.
Thus, in Orient Ins. Co. v. Board of Assessors, 124 La. 872, 50 South. 778, the appeal embraced 23 cases in which certain foreign insurance companies attacked assessments of past years, on “money in possession, credits, and open accounts,” as null and void, on the ground that they had no money in possession, and that their credits and open accounts were not taxable in this state. They prayed that the assessments he canceled, or, in the alternative, reduced. In disposing of the case, the majority of the court, speaking through Mr. Justice Provosty, said:
“In so far as the suits are for reduction of the assessments, the defendant opposes to them section 26 of the revenue law (Acts 1898, p. 360, No. 170), which reads:
“ ‘But the action to test such correctness shall be instituted on or before the first day of November of the year in which the assessment is made.’ The suits were filed in August, 1908. The assessments of 1906 and 1907 are barred, therefore, by said statute, unless the reason assigned by plaintiffs why said statute would not have application is valid. It is that there was a tacit understanding_ between the tax officers of the state and plaintiffs, by which the offi *292 cers, on the one hand, should do nothing towards the enforcement of the taxes under said assessments, and the plaintiffs, on the other hand, should take no steps to annul or reduce said assessments until the case of Liverpool & London & Globe Ins. Co. v. Board of Assessors, 122 La. 98, 47 South. 415, involving the same issue, and then pending, should have been decided.”
It is then held that such an understanding, if proved could not be given effect, as the assessors and tax collectors have no power to stay the operation of the tax laws by agreements with the tax debtors. And the opinion proceeds:
“The assessments are grossly excessive. So much so that it is manifest that they were the results of mere guesswork, as, indeed, is testified to by one member of the board of assessors. , More than this, the board of assessors was furnished by plaintiffs with a correct return, in the years 1907 and 1908. But the suit for the reduction of the assessments of 1906 and 1907 is barred by the said statute. As to them the court is powerless to grant relief.”
We do not mean to say, here, that if, in the case cited, the court had found that the evidence sustained the returns made by the insurance companies, to the effect that they had no property, within this state, liable to taxation, the assessments might not have been annulled, even though the applications had not been made prior to November 1st of the year in which they were made. That question was not passed on, and we are not passing on it now. We do mean to say, however, that where, in view of the provisions of our Constitution whereby tax titles, in three years, save for certain specified defects, became as good as any other titles, an individual buys property at tax sale, spreads his title on the public records, returns the property, with other property, unquestionably belonging to him, to the assessor, as his own, and voluntarily pays the taxes on it, year by year, with the effect, and, presumably, the intention, of fortifying his title for the purposes of the prescription established, by the Constitution, he has no standing, years after-wards, to complain that the taxes were paid in error and to demand their return from the municipality to which they were paid.
In Oteri v. Parker, State Tax Collector, 42 La. Ann. 374, 7 South. 570, it was held that: “The charges of illegality of an assessment, on the grounds that * * * some of the property was not the tax debtor’s, exclusively, but that it was owned by him jointly with others,” involve the correctness of the assessments and should be made before November 1st of the year in which the assessment is made. And to the same effect is the decision in the case of Griggsry Construction Company v. Tax Collector, 108 La. 437, 32 South. 399 (58 L. R. A. 349), where, one of the grounds of attack upon the assessment being “that the assessment includes property not belonging to plaintiff and for the taxes on which plaintiff is not responsible,” it was said:
“Suffice it to say that plaintiff, having been called upon by the assessor to furnish a list of its property, and having failed to do so, is, by the express terms of the revenue act (section 14), estopped from contesting the correctness of the assessment list filed by the assessor.”
It may be remarked, in conclusion, that the assessments here involved were mainly for the years 1900, 1901, 1902. They constituted the basis upon which the police jury of the parish of Natchitoches prepared its budget and regulated its expenses for each succeeding year; the money collected has long since been spent; and the claim of the plaintiffs, through whose voluntary acts the present condition of affairs has been brought about, that it should now be refunded to them, thereby, perhaps, involving the necessity of imposing a special tax for their benefit, appears to us to be entirely without merit, either in law or equity. In Fuselier v. St. Landry Parish, 107 La. 231, 31 South. 682, Nicholls, C. J., as the organ of the court, said:
“We say, as did the court, in the Campbell Case, and in that of the Factors’ & Traders’ Ins. Co., that, if the plaintiff had any objections to urge, they should have been urged at a *294 proper time and in a proper manner. He cannot, for his individual benefit, throw the finances _ of the parish into inextricable confusion; he is estopped, at this late day, after so many rights have accrued on the strength of his acquiescence and that of the other taxpayers of the parish, from disturbing the present situation.”
And so we say here. It may be that the particular amount claimed by the plaintiffs now before the court can be paid by the parish of Natchitoches without embarrassment; but the granting of their demands involves an acquiescence in the proposition that every one who chooses to speculate in tax titles and to assume the quality of owner with respect to property which he does not own, which he may readily inform himself that he does not own, but which he may hope thereby to make his own, may do so at the risk of the state or parish and not at his own risk — a proposition which, in view of the laws regulating tax sales and the collection and expenditure, for governmental purposes, of money paid for taxes, we are unable to entertain.
It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeals, Second Circuit, here made the subject of review, be annulled, avoided, and reversed, and that there now be judgment affirming the judgment herein rendered by the district court; plaintiffs to pay all costs.