No. 13,363.

52 1005
c112 531
e1131027

## J. B. PETITFILS & BRO. VS. THE TOWN OF JEANERETTE.

### SYLLABUS.

1. In Article 206 of the Constitution of 1879 it was declared that "no political corporation shall impose a greater license tax than is imposed by the General Assembly for State purposes".

This constitutional provision was removed by Article 229 of the Constitution of 1S98, so far as licenses upon dealers in distilled alcoholic or malt lísuors were concerned, but the adoption of this Article, while it left the General Assembly free by general law to confer upon political corporations the power of imposing upon dealers of that peculiar description higher licenses than those imposed by the State, did not have the effect *pro facto* of conferring such power upon political corporations which in the statutes creating them had been expressly restricted in the power of license taxation therein granted them to licenses not to exceed those of the State.

The withdrawal of the constitutional restriction did not enlarge the limited grants of powers given to them by the Legislature.

It required legislative action for that purpose and an extension of their powers in this respect was in fact given by the 16th Section of Act No. 171 of 1898. (Mayor and Council of Alexandria vs. White, 46th Ann., 451; Railroad vs. Town of Kentwood, 49th Ann., 933.)

2. It being admitted that none of the dealers in distilled alcoholic or malt liquors in the town of Jeanerette would fall into a class higher than the 8th, or lowest class in the State's classification for liquor licenses, those dealers are in no wise injured by the town council's not adopting a classification of licenses to cover dealers falling into the State's upper classes, nor have they any ground of complaint that the town did not adopt a classification for licenses extending downward below the lowest class adopted by the State for State purposes.

A PPEAL from the Nineteenth Judicial District, Parish of Iberia— *Voorhies, J.*

*Walter J. Burke & Brother* for Plaintiffs, Appellants.

*Philip H. Mentz* for Defendant, Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J.  Plaintiffs, who keep a liquor saloon in the town of Jeanerette, seek to recover back from that town the sum of five hundred dollars, that being an amount paid by them to defendant for a license demanded for a town liquor license for the year 1899.

In the event that the whole amount of five hundred dollars should not be recoverable, then it prays to recover at least four hundred dollars, which amount is the difference between the liquor license of $100 imposed by the State and the liquor license of $500 imposed by the town. The ground upon which recovery of the whole amount is predicated is that the defendant in imposing a license tax had fixed it at five hundred dollars "regardless of the volume and magnitude of the respective establishments" and had not "graduated" the tax according to the amount of business done as required by law.

The ground upon which the alternative demand for the recovery of four hundred dollars is based is that the defendant town is under its original charter and the amendments thereto limited in the exercise of its power of license taxation to the imposition of a tax not greater than that imposed by the State for its own purposes.

Defendant after pleading the general issue averred that it was a municipal corporation in the full enjoyment and exercise of the corporate powers conferred upon it.

It admitted to have received five hundred dollars from the plaintiff and alleged that it had the legal right to do so. It averred that the restrictions in its charter which prevented it from levying a greater license tax upon liquor dealers than that imposed by the State were no longer in effect, and that such restrictions had been annulled and superseded by Art. 229 of the Constitution of 1898.

It averred that Art. 229 of the Constitution treats and deals with the entire subject matter of the right of a political corporation to levy a license tax upon persons occupying or pursuing any and all avocations and especially with the right to levy a greater license upon dealers in liquor than is required by the State; that it embraces the whole of the subject matter and is in itself a complete code of regulations as to said matters; that it specially permits all political corporations to require from liquor dealers a greater license than that required by the State and this without qualification, limit or conditions of any kind; that this article is now the sole rule upon the above subject and that any clause in its charter or that of any other political corporation whether resulting from special or general law and whether prior or later than the adoption of the Constitution of 1898, was thereby repealed and abrogated and that all such clauses and statutes which are inconsistent with the terms of said Article are unconstitutional and void, and it pleaded the unconstitutionality of any and all such clauses and statutes.

It pleaded that Art. 229 of the Constitution operated a complete repeal by *supersedure* of all and every clause in the defendant's charter and of every other law ever in force in Louisiana which deals with the rights of a political corporation to exact from a dealer in distilled alcoholic or malt liquors a greater license than what is required of such dealers by the State.

The following admissions appear in the record.

It is admitted that the town of Jeanerette was originally incorporated by Act No. 102 of 1878, that this original charter was amended by Act No. 30 of 1879, both of these being of the General Assembly of the State of Louisiana, and that it was further amended in accordance with Act No. 110 of 1881, the pertinent part of this last mentioned being that it contained the same clause as the original legislative charter limiting the power of the town to levy licenses to the amount levied by the State on each occupation; that the State of Louisiana has required and collected of this defendant a license of $100 (one hundred dollars) for pursuing during 1899, the occupation of retail liquor dealer; that for and during 1898, this plaintiff paid the town of Jeanerette, one hundred dollars for pursuing the said occupation during 1898, that for the year 1899, the town of Jeanerette imposed a license on all liquor dealers of five hundred dollars each; that all liquor dealers paid said town for the year 1898 a license predicated on sales amounting to less than five thousand dollars; that the annexed extract is a correct copy of the ordinance of said town, adopted December 3rd, 1898, and levying licenses for 1899.

It is admitted that plaintiffs paid to the town of Jeanerette the $500 license under protest, when steps for its collection were about to be taken in court.

A copy of the proceedings of the defendant's Town Council of Dec. 3, 1898, shows that on motion duly made and seconded "the license tax for liquor dealers of the Corporation of Jeanerette be levied at five hundred dollars to take effect Jan. 1, 1899, and other licenses to be according to revenue law of the State adopted at the last session of the Legislature."

The District Court rejected plaintiff's demand and they appealed.

Defendant's counsel in their brief say:

"This is a civil suit involving less than two thousand dollars, but as there is in contestation 'the legality of a tax, toll or impost', both parties have assumed that appellate jurisdiction is in the Supreme Court."

" The (next to) the last admission made means that *all* liquor deal-ers in that town had already declared that as to a State license they came within the five thousand limit mentioned in clause 8 of the list of such dealers in Act No. 171 of 1898, which sum is the minimum limit, and that if graduation was required they had united in making it impossible since they all claimed to have gross annual receipts less than the smallest amount on.which they could pay a license."

The town of Jeanerette owes its origin to Act No. 102 of the Extra Session of 1877. It took only such powers as the Legislature thought proper to bestow upon it and was bound by all limitations and restrictions placed upon them.

Act No. 102, of 1877, was amended by Act No. 30, of 1879.

By the first section of the amending act, the Mayor and Common Council were granted power and authority to * * * impose such license taxes as they might think proper on all retailers of spiritous liquors, * * * grog shops, * * * and all other occupations, trades or professions, not enumerated above, should they deem it expe-dient or necessary, provided such license should in no case exceed the same tax levied by the State upon any such occupation, trade or pro-fession.

The Legislature has never, by direct special statute, enlarged the powers of the town, in this respect, beyond those originally granted to it in these two acts, and Article 206, of the Constitution of 1879, which declared that no political corporation shall impose a greater license tax than is imposed by the General Assembly for State pur-poses, interposed a "constitutional" barrier to such extension by the General Assembly.

The provisions of Article 206, of the Constitution of 1879, were modified by Article 229 of that of 1898, which declared that "the General Assembly may levy a license tax, and in such case shall grad-uate the amount of such tax to be collected from the persons pursuing the several trades, professions, vocations and callings. All persons, associations of persons, and corporations, pursuing any trade, profes-sion, business or calling, may be rendered liable to such tax, except clerks, laborers, clergymen, school teachers, those engaged in mechani-cal, agricultural, horticultural and mining pursuits, and manufact-urers, other than those of distilled alcoholic or malt liquors, tobacco, cigars, and cotton seed oil."

"No political corporation shall impose a greater license than is imposed by the General Assembly for State purposes. This restriction shall not apply to dealers in distilled, alcoholic, or malt liquors."

The political corporations of the State, while necessarily affected by constitutional provisions having reference to them, and having reference to the powers of the Legislature over them, do not take their existence directly from the Constitution, but from the Legislature acting under the Constitution.

The adoption of Article 229, of 1898, freed the town of Jeanerette from the "constitutional" provision which, at that time, inhibited the General Assembly from authorizing the town to impose a license tax greater than that imposed by the State, and inhibited the town itself from doing so, but it left the powers of the town to be tested and determined by the acts of the Legislature creating it.

An examination of those acts discloses the fact that *ab inilio* only limited powers in respect to license taxation were ever granted to the town by the statutes from which it alone drew affirmatively its authority to act at all.

The action of the town was affected, first, by the fact of this absence of original *grant of power* from the Legislature, and next by the constitutional prohibition against its exercise of power. The two things are separate and distinct.

Had the powers of the different towns, and the defendant town, been circumscribed only by limitations in the "statutes" granting powers, defendant's proposition, that a general statute removing the limitations, would have had the effect *ipso facto* of extending the powers, leaving them unconfined, might be true, but where, to the want of grant of original power, there is added a constitutional inhibition, either to the "granting" of or "exercise" of power, the withdrawal of the constitutional restrictions did not *ipso facto* extend the limited powers which had been granted by the Legislature, but would only enable the latter to widen them should it think proper so to do. Until it should have done so, the towns were vested with only such powers as had *been* conferred on them in the acts creating them.

We have, therefore, to pass beyond Article 229 of 1898 and see whether the General Assembly has, by an act of its own since the adoption of the Constitution of 1898, extended the powers of the town of Jeanerette.

On the 14th of July, 1898, Act 171, of 1898, was approved by the Governor of the State.

The 31st section of the act declared that "all laws, or parts of laws, in conflict" with it were repealed. The act was entitled, "An act to levy, collect and enforce payment of an annual license tax upon all persons, associations of persons, or business firms and corporations pursuing any trade, profession, vocation, calling or business, except those who are expressly excepted from such license by Article 229 of the Constitution, and prescribing the mode and method in which certain persons, subject to license, shall make report of their business."

By the 16th section of the act it was enacted that "any municipal or parochial corporation in the State shall have the right to impose a license tax on any business, occupation, or profession, herein provided for, provided that all such license tax shall conform to the provisions of Article 229 of the Constitution."

We think this section of the act is a general affirmative grant of power by the General Assembly to the different existing political corporations of the State and widening the otherwise restricted powers theretofore conferred on them to the extent declared in the section (Mayor and Common Council of Alexandria vs. White, 46 Ann., 451; Railroad vs. Town, 49 Ann., 933).

We do not find in Act No. 136, of 1898, anything which would militate against such being the effect of Act No. 171, the latter being an independent statute.

It is true that the last clause of Section 40, of Act No. 136, referring to municipal corporations in existence at the time of its passage, declares that until they should elect to fall under the operation of its provisions, their corporate powers, rights and franchises, should be and remain as then provided for by law, but we understand this to mean that existing municipal corporations would be unable to avail themselves of the benefit of any special privilege or power provided for and conferred in that particular act upon municipal corporations, which was not then existing in their favor until they should agree to be found and controlled by all its provisions.

The defendant claims no special right, privilege or power for itself to be drawn from and derived from Act No. 136, and, therefore, the clause in question finds no application to the issue now before the court.

It is contended that the license imposed by. the town on liquor dealers, for the year 1899, was absolutely null and void, for the reason that it was not graduated so as to exact a different amount from different dealers under a classification based upon the extent of the business done by them. .

Article 229 of the Constitution of 1898, dealing with the subject of license taxation for "State" purposes, declares that "the General Assembly may levy a license tax, and in such case shall graduate the amount of such tax to be collected from the persons pursuing the several trades, professions and callings."

It does not mention in this particular connection the graduation by the political corporations of the license taxation which they were authorized to impose. The provisions, however, that no political corporation should impose a greater license tax than was imposed by the General Assembly for State purposes, carried with it, as a consequence, that the different political corporations were forced to adopt and follow the same classification for license purposes which the State had adopted, so as not to impose upon any particular individuals, corporations or firms, any greater license than the State was exacting from the different classes.

We know of no obligation, at any time, on the part of the political corporations to make a classification more minute than that which the State had made, and to carry the classification down to below the lowest class as fixed by the State, or which required them to exact or impose licenses along the whole line of the State's upper classifications.

In graduating liquor licenses, the State has divided the dealers into eight classes, Class A, and 1st, 2nd, 3rd, 4th, 5th, 6th, 7th and 8th classes. Class A includes dealers with a gross annual receipt of fifty thousand dollars, or more. Class 2 of twenty-five thousand dollars, or more, and less than $37,500. Class 3 of twenty thousand, or more, and less than $25,000. Class 4 of fifteen thousand dollars, or more, and less than $20,000. Class 5 of ten thousand dollars, or more, or less, than $15,000. Class 6 of seven thousand five hundred, or more, or less, than $10,000. Class 7 of five thousand dollars, or more, or less, than $7,500. Class 8 of less than five thousand dollars.

The licenses imposed upon these different classes range from fifteen hundred dollars, for Class "A," to one hundred dollars for the Eighth Class.

Taking it for true (as we hold it to be true) that the town of Jean-erette was not limited in its license taxation upon liquor dealers to the amount of license imposed by the State in the different classes, and assuming that the town had adopted the same "classification" as the State had done (the eighth, or lowest class, consisting of dealers with annual receipts less than five thousand dollars), and that it had imposed a license tax of five hundred dollars upon dealers of that class, it is manifest that the plaintiffs would have had no ground of complaint against a license of five hundred dollars.

They would, in vain, urge the want of equality and uniformity in the taxation (41 Ann., 521, City of New Orleans vs. Pontchartrain Railroad Company), and that the classification should be continued downward.

This being the situation, in what way would the plaintiffs (dealers falling under the lowest class) be prejudiced by the failure of the town to have adopted a classification upward for dealers with annual receipts ranging from fifty thousand dollars down to five thousand dollars?

It is admitted that there are no liquor dealers in Jeanerette with annual receipts of five thousand dollars, or more, and that all dealers in the town would fall under the lowest class according to the State's classification, if that had been adopted and been subject, legally, to a license of five hundred dollars.

The only injury set up is that "throughout the Parish of Iberia (excepting in said town) a graduated schedule of licenses not exceeding that of the State, prevails and is in force." We do not see how, by any action of this court, the Police Jury and the authorities of the town of Jeanerette (bodies entirely independent of each other) could be forced into conformity with each other in the adoption by them of the rates of liquor license taxation.

We find no legal ground for reversing the judgment appealed from, and it is hereby affirmed.

Rehearing refused.