(36 South. 552.)

No. 15,183.

MAYOR & BOARD OF TRUSTEES OF TOWN OF NEW IBERIA v. MOSS HOTEL CO., Limited, et al.

(April 25, 1904.)

MUNICIPAL CORPORATIONS — ORDINANCES — SIGNATURE BY MAYOR — INTOXICATING LIQUORS—LICENSES—CONSTITUTIONAL LAW—RECOVERY OF TAX VOLUNTARILY PAID.

1. Whether the signature of the mayor is indispensable to the validity of a municipal ordinance, and whether such signature may be affixed as well at one time as at another, depend upon the language of the charter under which he exercises his functions.

2. Under the charter of the town of New Iberia it is essential to the validity of an ordinance adopted by the governing body that it shall be signed by the mayor before its promulgation.

3. Where the General Assembly confers upon a municipal corporation authority to impose license taxes upon retail liquor dealers without restriction save such as may be found in the Constitution, the authority so conferred is not affected by the fact that state licenses to such dealers must be graduated.

4. Where a license levied under a municipal ordinance which has been passed without the observance of some legal requirement has been voluntarily paid, it can be recovered on the ground of error only under exceptional circumstances.

(Syllabus by the Court.)

Appeal from Nineteenth Judicial District Court, Parish of Iberia; T. Don Foster, Judge.

Consolidated proceedings by the mayor and board of trustees of the town of New Iberia to compel the Moss Hotel Company, Limited, and others, to pay a license tax as retail liquor dealers. From a judgment for plaintiff, defendants appeal. Modified and affirmed as to part of the defendants, and reversed as to the others.

Andrew Jackson Cammack, for appellants. Joseph Lewis Haase, City Atty. (Burke & Burke, of counsel), for appellee.

Statement of the Case.

MONROE, J. The plaintiff proceeds by rule against the Moss Hotel Company, Limited, Edward Nereaux, M. F. Smith, L. B. Delahoussaye, Alphonse Lacour, Ralph Landry, and Jos. Maniscako to compel them each to pay a license of $1,000 as retail liquor dealers in New Iberia for the year 1904. The four defendants first named answer, admitting that they have been in the business since January 1, 1904; denying that they owe more than $150, which they allege that they have tendered; alleging that the ordinance under which the plaintiff claims is void for the reasons that it was not signed by the mayor until after its promulgation, and that, in any event, it is illegal and unconstitutional, because it fails to graduate the license. The answers of the three defendants last named differ from the others only in that they allege that those defendants have each, by error, paid $250, and that they are entitled to recover $100 as overpaid.

The following facts are admitted or proved: That the town charter authorizes the mayor and board of trustees to impose a liquor license as contemplated by article 229 of the Constitution; that upon August 3, 1903, the ordinance here relied on, reading as follows,

was adopted, to wit: "Be it ordained * * * that, from and after the first day of January, 1904, any person or persons, corporation, or firm, who shall engage in the sale of alcoholic or malt liquors, wine, beer, or other intoxicating liquors, within the corporate limits of the town of New Iberia, shall be liable to a license tax of $1,000 for each business or firm for each calendar year," etc. That said ordinance was duly inscribed on the minute book, and was published in the official journal of the town upon August 15, 1903, but was not signed by the mayor or secretary until January 4, 1904. That each of the defendants paid a state license of $100 and a town license of $150 for the year 1903, and that each of them fell within class 8, as provided by section 13, Act No. 171, p. 413, of 1898. That, in order to create two classes, the Moss Hotel Company, Limited, by advice of counsel, after service of the rule herein, caused the license collector to place it in class 7 for 1904, and paid a state license of $200, and that this was done solely to put at issue the want of graduation in the said ordinance. That said ordinance was adopted as much with a view to the elimination of small grogshops and as a police regulation as for the purposes of revenue, and that all licenses are delinquent after February 1st of each year. Lacour, Landry, and Maniscako testify that they each paid $250, with the intention of paying the balance of the $1,000 license, in installments, when they were informed that it was illegal. The mayor testifies that he intended to sign the ordinance when it was passed, and that his failure to do so was the result of an oversight, or rush of business. It is admitted that the minutes of the meeting at which the ordinance was adopted were signed by the mayor.

### Opinion.

According to the charter, the governing body of the town of New Iberia consists of the mayor and six voters and taxpayers, du-

ly elected; and the duties of the mayor, in connection with the adoption and promulgation of ordinances, are prescribed as follows: "The mayor shall * * * sign all resolutions, by-laws and ordinances and affix the corporate seal thereto except as may be otherwise herein provided. * * * He shall have the right to veto any law, by-law, resolution, or ordinance of the board, and any law, by-law, resolution, or ordinance, so vetoed, shall be re-submitted to the board, and, if passed by the votes of five members, shall become a law without his signature. He shall, upon the signature of all laws, by-laws, resolutions and ordinances, or, upon their becoming of force without his signature, cause them to be published in the official journal, or in the manner to be prescribed by the board, whereupon they shall be of force as law."

The language thus used is about as specific and mandatory as could well have been selected. The mayor "shall" sign all ordinances, or, if he vetoes, he "shall" resubmit, them to the board, in which case they acquire the force of laws only when passed by the votes of five out of the seven members constituting the board. "Upon the signature" (being affixed), or, upon the ordinances being passed over his veto, he "shall" cause them to be published, "whereupon they shall be of force as law." "Whereupon," as thus used, means "after which"; and the meaning of the provision is that, after the commands of the law, as thus given, have been obeyed, and not before, the ordinances "shall be of the force of law."

The ordinance in question was promulgated August 15, 1903, without having been signed by the mayor, or passed over his veto, and although the mayor afterwards, on January 4, 1904, affixed his signature, it has never been promulgated since that time. It is said that it makes no difference whether the mayor signed before or after the promulgation, but we are unable to concur in that view.

It might as reasonably be said that it makes no difference whether the Governor signs a law of the state before or after its promulgation. A municipal ordinance is a local law, affecting the property, rights, and liberty of citizens, who are entitled to know at what time and under what circumstances it acquires that status; and the General Assembly never intended to confer upon the mayor of New Iberia the power to determine, at any hour of the day or night, during an indefinite period, whether a typewritten instrument, which he may carry about on his person, and which has been promulgated as a law, is in reality a law or only so much waste paper.

In the case of Mayor of Breaux's Bridge v. Dupuis, 30 La. Ann. 1105, it appeared that the charter of Breaux's Bridge required the mayor to "sanction" all ordinances passed by the board, that the ordinance there in question had been passed and promulgated, and that the mayor was prosecuting the suit in its enforcement. Our predecessors in this court nevertheless held that it was inoperative, because the mayor had not signed it.

The language of Act No. 37, p. 71, of 1876, which was interpreted in the case of Town ex rel. Thompson v. Andrus, 37 La. Ann. 699, was not as explicit or peremptory as that with which we are now dealing, and could reasonably be held not to have made the president of the board, as such, a constituent part of the legislative power; his function in signing ordinances being ministerial, and involving the exercise of no discretion. Upon the other hand, in the recent case of Town of Manderville v. Band, 111 La. 806, 35 South. 915, the decision in the case of Mayor of Breaux's Bridge v. Dupuis, supra, has been affirmed, and it has been held that, the signature of the mayor being required, his failure to affix it at the proper time was fatal to the ordinance, and that the defect was not cured by his signing upon the day of the trial. Our conclusion upon this branch of the case is that, whether the mayor's signature is in-

dispensable to the validity of an ordinance, and whether such signature may be affixed at one time as well as at another, depends upon the language of the charter under which he exercises his functions, and that the charter which we are now considering makes it essential to the validity of all ordinances that they should be signed by the mayor before their promulgation.

Another question forced upon our consideration is whether the ordinance violates those provisions of the Constitution which require that licenses shall be graduated.

Article 224 of the Constitution provides that "the taxing power may be exercised by * * * parishes and municipal corporation * * * under authority granted them by the General Assembly," etc.; and article 229 provides that: "The General Assembly may levy a license tax, and in such case, shall graduate the amount of such tax. * * * No political corporation shall impose a greater license tax than is imposed by the General Assembly for state purposes. This restriction shall not apply to dealers in distilled, alcoholic or malt liquors." Whatever power a municipal corporation may possess to levy taxes must unquestionably be derived from the General Assembly, and in the way of licenses such corporation may not levy a greater tax than is imposed by the General Assembly for state purposes, provided "this restriction shall not apply to dealers in distilled, alcoholic, or malt liquors." That is to say, construing together the two articles quoted, a municipal corporation, if so authorized by the General Assembly, may levy a greater license tax upon liquor dealers than is levied by the General Assembly for state purposes. There is, as we have seen, a specific admission in the record to the effect that the plaintiff is authorized by its charter, as amended by Act No. 130, p. 196, of 1898, to levy upon retail liquor dealers license taxes in excess of those imposed by the state, and subject to no other limitation than such as

are imposed by the Constitution. The Constitution imposes no limitation, save that the tax shall bear equally upon individuals engaging in the same business; and the fact that state liquor licenses must be graduated in no manner affects the question, for, should the plaintiff decide to graduate its liquor licenses, it would be under no obligation to conform to the graduation established for state purposes, but might adopt the state's highest grade for its lowest, or vice versa. We find nothing in the Constitution, however, or in any statute law to which our attention has been called, which requires the plaintiff to graduate its liquor licenses, and in expressing a different view in the case of Petitfils Bros. v. Town of Jeanerette, 52 La. Ann. 1005, 27 South. 358, the court lost sight of the concluding paragraph of the first clause of article 229 of the Constitution, which authorizes the General Assembly to give to the political corporations throughout the state a free hand in the matter of imposing licenses upon retail liquor dealers without regard to the licenses imposed upon such dealers by the state.

The defendants admit that they are each liable for $150, and those who have not paid will be condemned upon the admissions so made. Three of them have paid $250 as installments upon the license of $1,000, which they assumed had been legally imposed, and which they intended to pay until they were otherwise advised, and they each seek to recover the difference between that amount and the $150 which they admit to be due. This relief cannot be afforded them. Fuselier v. St. Landry Parish, 107 La. 221, 31 South. 678. Counsel for plaintiff argue that defendants are estopped to question the validity of the ordinance by reason of the fact that after its promulgation (in December, 1903) they petitioned the board of trustees to reduce the amount of the license from $1,000 to $500, and also because they each acknowledge an obligation to pay $150. We, however-

er, find no ground of estoppel in this conduct. It does not appear that the defendants were aware, when they presented their petition, that the ordinance was incomplete, and of no effect; and, if they had known it, their asking that a lower license be imposed by a valid ordinance would not estop them to contest the validity of the ordinance of which they were complaining. We are not advised why the defendants who have not paid admit that they each owe $150, and can find no reason for holding that such admission estops them to deny owing $1,000. Nor do we think that the other defendants who have each paid $250 should be estopped to deny that they owe $750 more, since the discovery has been made that the ordinance under which they paid is illegal.

For these reasons it is ordered, adjudged, and decreed that the judgments herein rendered against the Moss Hotel Company, Limited, Edward Nereaux, M. F. Smith, and L. B. Delahoussaye be amended by reducing the principal amounts thereof from $1,000 to $150, and, as amended, affirmed; and that the judgments rendered against Alphonse Lacour, Ralph Landry, and Joseph Maniscako be annulled, avoided, and reversed, and the demands against them rejected, at the cost of the plaintiff in both courts.

It is further adjudged and decreed that the demands in reconvention of the three defendants last mentioned be dismissed without prejudice to their right to reassert them in the event of their being hereafter disturbed by the plaintiff with reference to licenses for the year 1904.

It is further adjudged and decreed that the plaintiff pay the costs of this appeal.

### On Application for Rehearing.

#### (May 9, 1904.)

Whether the plaintiffs are authorized at this time to adopt an ordinance imposing a retail liquor license for the unexpired term of

the year 1904 has not been presented as an issue in this case, and has not been, and cannot well be, decided upon the pleadings in the record. If there be no legal impediment, and the plaintiffs impose such license, then, in order that it may bear equally upon all persons engaged in the retail liquor business, the amounts which the defendants, or either of them, have paid, or which they, or either of them, may pay, under the judgment herein rendered, should be credited on the licenses that may be demanded of them ·respectively.

Rehearing refused.