366 So.2d 1059 (1978)
RUE LAFAYETTE MORTGAGE CORPORATION et al., Plaintiffs and Appellants,
v.
Marie H. WENGER, Mayor, Town of St. Francisville et al., Defendants and Appellees.
No. 12379.
Court of Appeal of Louisiana, First Circuit.
December 27, 1978.
Rehearing Denied February 12, 1979.
Robert L. Roland, Baton Rouge, for plaintiffs and appellants.
Jesse L. Means, St. Francisville, James D. Thomas, II, Charles O. Simmons, Jr., Baton Rouge, for defendants and appellees.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
SARTAIN, Judge.
Petitioners Rue Lafayette Mortgage Corporation (Rue Lafayette) and Steve Allen seek a writ of mandamus directing the officials of the Town of St. Francisville to issue to them an occupancy permit allowing the use of their premises as a mobile home park. The town's refusal to issue the permit due to non-compliance with the Trailer Park & Mobile Home Ordinance was upheld by the lower court. Petitioners appeal. We affirm.
The property in question is a tract of approximately 4.8 acres, most of which was originally owned and developed by Seigen *1060 Development, Inc., the owners of an adjacent motel. Improvements on the premises consist mainly of sewerage lines, utility outlets, concrete drives, bathroom facilities and fifty-one concrete parking pads. Construction was done pursuant to a duly issued building permit. Seigen Development operated on the tract the Holiday Inn Trav-L Park. This business continued, without protest from the town, until July 21, 1976, when Rue Lafayette foreclosed on its mortgage and purchased the property at the sheriff's sale. On August 3, 1976, Rue Lafayette entered into a written lease of the premises with Steve Allen.
Allen desires to use the property as a mobile home park, perhaps reserving a few spaces for short stays by recreational vehicles. He contemplates owning some thirty six to forty trailers and renting them for use as residences.
Repeated requests by Allen and Rue Lafayette for a permit authorizing use of the premises for this purpose were denied.
Town officials maintain that the proposed use would be in violation of the town's Trailer Park and Mobile Home Ordinance because the premises do not satisfy the requirements of that law. Petitioners do not seriously dispute their failure to meet the conditions of the trailer park ordinance. Their position is that they do not have to satisfy these requirements because the ordinance is inapplicable for one of the following two reasons: (1) the statutory procedure for the enactment and recording of municipal ordinances was not complied with and therefore the ordinance is invalid; (2) even if the ordinance is valid, it does not apply to these premises because they are excluded from its scope by a provision which allows the continued operation of trailer parks established prior to the effective date of the ordinance.

VALIDITY OF THE ORDINANCE
St. Francisville is a municipality chartered under the Lawrason Act, which is set forth at La.R.S. 33:321, et seq. R.S. 33:406 details the procedure to be followed in enacting, promulgating and recording ordinances. In pertinent part it reads as follows:
"All ordinances shall be read and considered by sections at a public meeting of the mayor and board of aldermen, and, if adopted, shall be signed by the mayor or other officer presiding in his absence.. . . A vote shall never be taken on an ordinance not previously reduced to writing. . . . The clerk shall keep a book to be styled `Ordinances, City (or Town, or Village) of..............,' in which he shall file the original of every ordinance which has been adopted immediately after its passage . . . ."
The town clerk of St. Francisville testified that original ordinances were not placed in the town's ordinance book as directed by the above statute, but instead were kept loose in a filing cabinet. The ordinance book contains instead typed copies of the original ordinances.
At the time of trial, the original copy of the Trailer Park and Mobile Home Ordinance could not be found. A certified copy of the ordinance book entry was introduced into evidence. The ordinance book did not indicate that the original ordinance had been signed by the mayor. The clerk testified that it was her practice when copying an original ordinance to indicate a signature by the symbol "s/"; that she had not done so on this entry in the ordinance book; but that nevertheless she "believed" the mayor had signed the missing document. However, she readily admitted that she did not actually remember whether it had been signed. The minutes of the town meeting at which the trailer park ordinance was adopted show that the mayor was in attendance and presided.
Petitioners argue that the improperly kept ordinance book and the lack of the mayor's signature are deviations from the requirements of R.S. 33:406 which invalidate the ordinance. We disagree.
The importance of maintaining logically ordered, readily accessible, legible and complete records of the official acts of a governing body is obvious. Such well-kept *1061 records are the objective of the statute directing the establishment of an ordinance book. However, we feel it would be unduly harsh and restrictive to hold an otherwise valid ordinance void simply because the original copy was placed in a file drawer instead of in the ordinance book when the town otherwise maintains records and minutes as required by law. We are supported in our opinion by the Supreme Court in the case of Town of Crowley v. Rucker, 107 La. 213, 31 So. 629 (1902), wherein it is stated that "[t]hat part of the statute referred to, providing for the inscription of ordinances adopted by municipalities in a book kept for that purpose, is directory merely."
Pretermitting the factual determination of whether the original ordinance was actually signed by the mayor, we hold that a mayor's failure to sign does not invalidate an ordinance. Several cases in the jurisprudence of this state have dealt with this issue. See, Town of Opelousas v. Andrus, 37 La.Ann. 699 (1885); Town of Mandeville v. Band, 111 La. 806, 35 So. 915 (1904); Town of New Iberia v. Moss Hotel Co., 112 La. 525, 36 So. 552 (1904). However, the holdings of these cases are distinguishable as each involved the interpretation of language found in town charters and not the language of § 406.
The signing requirement was added to § 406 by Acts 1948 No. 364. R.S. 33:404, which is entitled, "Duties of mayor," included no mention of the signing of ordinances prior to its amendment by Acts 1970 No. 119 § 1. The amended text reads in pertinent part as follows:
"The mayor shall preside at all meetings of the board of aldermen, and in case there is an equal division, he shall give the deciding vote. . . . The mayor shall have ten calendar days after any law, bylaw or ordinance shall have been presented to him by the board of aldermen within which to approve or veto it. If he approves it, he shall sign it; if not, he shall return it to the board of aldermen with his objections. The board of aldermen after receipt of the mayor's veto message may at the next regularly scheduled session reconsider the law, bylaw or ordinance and may override the veto by a two-thirds vote of the elected membership. If the mayor neither signs nor vetos the law, bylaw or ordinance within the prescribed ten calendar days it shall become effective as if he had signed it. (Emphasis added.)
Laws in pari materia are to be construed together, giving recognition to the rule that later laws may impliedly repeal or modify contrary provisions in earlier enactments. C.C. arts. 17, 22, 23.
A reading of §§ 404 and 406 side by side leaves no doubt that, at least since 1970, the mayor's signature is not a prerequisite to the validity of an ordinance.
In summary, we hold, in full agreement with the lower court, that the procedural irregularities pointed out by petitioners did not render the Trailer Park and Mobile Home Ordinance invalid.

NON-CONFORMING USE
Section 5(c) of the Trailer Park and Mobile Home Ordinance expressly exempts from its provisions trailer parks existing prior to its effective date of April 9, 1975.[1] Petitioners take the position that the Holiday Inn Trav-L Park, which was in operation when the ordinance went into effect, was a non-conforming use which puts the premises beyond the scope of the ordinance. Town officials, on the other hand, argue that the prior use of the premises was as a camper or recreational vehicle park, not as a mobile home park; that it thus does not qualify as a non-conforming use under the trailer park ordinance; and that, therefore, it is subject to the requirements set forth in that ordinance.
*1062 Petitioners do not seriously contend that the park operated by their predecessor in title was a mobile home park. The evidence shows that the Holiday Inn Trav-L Park served smaller vehicles known as campers or recreational vehicles, which generally stayed only short periods of time. Petitioners freely acknowledge, as they must, that there is a difference between recreational vehicles and mobile homes. As the judge a quo noted, the latter are generally larger, more stationary and are occupied on a more permanent basis. Petitioners maintain, however, that the ordinance does not make a distinction between the two types of vehicles and includes within the term "trailer park" a facility for recreational vehicles. If their position is correct, the exemption for existing trailer parks would cover the Holiday Inn Trav-L Park.
Section 2 of the ordinance lists the following definitions:
a. MOBILE HOMES OR TRAILERS means a vehicle used for living and sleeping quarters and standing on wheels or on a rigid support.
b. MOBILE HOME PARK OR TRAILER CAMP is a tract of land which is used or held out to the public for the purpose of supplying a parking space for two or more mobile homes or trailers.
c. CAMPER-TRAILER is a recreational vehicle standing on wheels.
Petitioners point out quite correctly that the definition of "mobile homes or trailers" is broad enough to cover a recreational vehicle or camper. Nevertheless, it is clear from a reading of the entire ordinance that the aldermen who drafted it did not intend that definition to have such a wide sweep.
We interpret the listing of a separate definition for "camper-trailer" as an attempt to distinguish the camper from the larger trailer. Had the definition of "mobile homes or trailers" been intended to include camper-trailers, it would have been a simple matter to indicate this expressly in the definition of the former. In the absence of such a statement, the most logical conclusion is that the two definitions are mutually exclusive.
It should be noted that the term "mobile home park or trailer camp" is defined in terms of "mobile homes or trailers," no mention being made of camper-trailers. Also the list of restrictions on trailer parks is prefaced with the following language: "It shall be unlawful for any person to open or operate a trailer park . . . for the purpose of supplying parking space for two or [more] mobile homes, unless such person shall first obtain a permit. . ." (Emphasis supplied). Once again the use of the term "mobile home" and the failure to use "camper-trailer" indicates the limited scope of the ordinance.
A further indication of the Board of Aldermen's intent is found in 4(a)(9), which states:
"There may be established a separate or optional area for overnight campers which area shall be provided with central facilities."
This is additional proof that there existed in the minds of the drafters a definite distinction between mobile homes or trailers and recreational vehicles. The fact that space for recreational vehicles is mentioned only as "a separate or optional area" in a mobile home park is a clear indication that the other provisions of the ordinance are not directed at parks exclusively for recreational vehicles.
For the above reasons, we conclude that the Trailer Park and Mobile Home Ordinance does not apply to recreational vehicle parks that are not part of mobile home camps. Therefore, it follows that the prior use of petitioner's premises as a camper park does not qualify as a non-conforming use exempting the tract from the requirements of the ordinance. There being little doubt that petitioners have not satisfied the conditions of the trailer park ordinance, the writ of mandamus should not issue.
The judgment of the district court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] "This ordinance has no application to any trailers or trailer parks already established or located within the corporate limits of the Town of St. Francsville prior to the effective date of this ordinance, said trailers or parks hereafter considered as non-conforming uses to which the terms of this ordinance does (sic) not apply."