ARTHUR J. PLANCHARD, Judge Pro Tem.
Plaintiff, Carolyn Masters, brought suit individually and as custodial parent, on behalf of her minor son, Dustin Walker, against the Village of Florien and against Brian and Martha Footes, for injuries Dustin suffered as the result of an attack by a Great Dane which occurred on October 3, 1983. The trial court found the Footes liable as owners of the dog under La.Civ. Code 2321. The court also found the Footes negligent in permitting the dog to roam at will without supervision. The Court found no fault on the part of the Village of Florien or on the part of the plaintiffs and awarded $8,813.03 in special damages and $50,000.00 in general damages. From this judgment plaintiff now appeals.
*1339 Plaintiff’s assignment of errors are as follows:
1. The trial court erred by not awarding judgment against the Village of Flo-rien.
2. The trial court erred in the amount of the judgment awarded.
FACTS
This attack occurred on October 3, 1983 while Dustin Walker was playing with his brother Chad and the Footes minor child Sammy. At this time the children were ages two, eight and six, respectively. The children were playing outside that afternoon at the Footes residence. There is no indication of what caused the Great Dane dog to attack Dustin but it is clear that Dustin did not provoke the dog.
Immediately after the attack Dustin was taken to the emergency room where he required 116 sutures to close the wounds around his face and neck. He thereafter had to undergo plastic surgery to excise the scarred tissue and he would require four to six months of therapy to assuage the psychological distress he suffered as a result of the attack. Dustin responded well to the medical treatment, including plastic surgery, and should not suffer from any significant permanent scarring.
Prior to the attack Mrs. Masters had complained about the dog running loose to the Village of Florien on various occasions. Mrs. Iva Lee Arthur, a neighbor of Mrs. Masters, testified that she had also complained about the dog on one occasion prior to the attack. It is Mrs. Masters position that the Village of Florien was negligent in failing to either apprehend the dog or in making sure the owners took steps to prevent it from running freely and unsupervised through the neighborhood in contravention of LSA R.S. 3:2771, et seq. and a local ordinance. She also contends that the amount of the award was inadequate.
The Village of Florien contends that it had no duty to apprehend the dog on the date in question because it was on the owner’s property and because no complaint had been filed against it. It further contends that there was not a valid ordinance pertaining to dog leashes in effect within the village limits on the date the accident occurred.
LIABILITY OF THE VILLAGE OF FLORIEN
At the trial of this matter the mayor of the Village of Florien, John Manasco, presented the Court a jumbled mass of papers which purported to be the Village’s ordinances. These papers were presented to the Court in response to a subpoena duces tecum issued at the request of the plaintiff. Among these papers was a document entitled Ordinance No. 6 which pertained to dogs. It was the mayor’s position that this document was not a valid ordinance because it was not signed or dated and there was no proof of publication. The trial court found that the Village of Florien did not have a validly promulgated leash law. Plaintiff now relies on the case of Town of Coushatta v. Valley Electric Corporation, 139 So.2d 822 (La.App. 2nd Cir. 1961), for the position that the validity of an ordinance can not be collaterally attacked. The ordinance in question in Cous-hatta was one which extended the boundaries of the town. The town sought to enjoin a utility from providing electricity within its borders because it did not have a franchise. The defendant raised an issue of whether or not the property was actually within the town limits because the ordinance extending the boundaries contained an erroneous description. The court noted that no direct attack had been made on the ordinance in question and therefore held that the defendant utility could not collaterally attack it. This case is readily distinguishable from the case at bar as this is not an attack on a presumptively valid ordinance.
In Coushatta the ordinance was validly promulgated but the attack was made against a descriptive error in the ordinance itself. In the case at bar, there has been no showing that the alleged ordinance was ever validly promulgated. “A city ordinance must be proved like any other fact unless there is a certified copy filed of *1340 which a court can take judicial cognizance.” Merchant v. Fuselier, 365 So.2d 852 (La.App. 3rd Cir.1978). Pacific Fire Ins. Co. v. Employers Liability A. Corp. 34 So.2d 796 (La.App.Orl.1948), LSA R.S. 13:3711 and 13:3712. While counsel for plaintiff has done a commendable job in attempting to prove the existence of the ordinance in question, the evidence simply does not show that a valid ordinance was in existence at the time of the attack. Mayor John Manasco testified that he had referred back to the minutes of June 2, 1969 at which the alleged Ordinance No. 6 purported to have been passed and that it had never been adopted. He also testified that it had never been advertised or promulgated. The face of the document also indicates that it was never signed or dated.
Plaintiff relies on Rue Lafayette Mortgage Corporation v. Wenger, 366 So.2d 1059 (La.App. 1st Cir.1978), for the contention that the absence of a signature on an ordinance does not invalidate it. In Rue the court noted that prior decisions which held that a mayor’s signature was either required on an ordinance or was not required had turned on language found in the town charters rather than on the language of LSA R.S. 33:406. The court noted that the signing requirement was added to R.S. 33:406 by Acts 1948 No. 364 and that LSA R.S. 33:404, which is entitled, “Duties of Mayor,” included no mention of the signing of ordinances prior to its amendment by Acts 1970 No. 119 Sec. 1. LSA R.S. 33:404, as amended, reads in pertinent part as follows:
“The mayor shall preside at all meetings of the board of aldermen, and in case there is equal division he shall give the deciding vote.... The mayor shall have ten calendar days after any law, bylaw or ordinance shall have been presented to him by the board of aldermen within which to approve or veto it. If he approves it, he shall sign it; if not, he shall return it to the board of aldermen with his objections. The board of aldermen after receipt of the mayor’s veto message may at the next regularly scheduled session reconsider the law, bylaw or ordinance and may override the veto by a two-thirds vote of the elected membership. If the mayor neither signs nor vetoes the law, bylaw or ordinance within the prescribed ten calendar days it shall become effective as if he had signed it.”
The court in Rue then stated, “A reading of Sections 404 and 406 side by side leaves no doubt that, at least since 1970, the may- or’s signature is not a prerequisite to the validity of an ordinance.” The clear implication is that prior to the amendment of LSA R.S. 33:404 the mayor’s signature was a prerequisite to the validity of an ordinance unless such requirement was dispensed with by the municipality's charter. The Village of Florien’s charter is not before us thus we must presume that the mayor’s signature on an ordinance is one of the prerequisites of a validly passed ordinance. It is clear in this case that none of the prerequisites of a validly passed ordinance was ever met and therefore the trial judge did not err in finding that the ordinance in question which purports to be Ordinance No. 6 of the Village of Florien is invalid.
Regardless of the validity of the document which purports to be Ordinance No. 6, The Village of Florien had a duty under LSA R.S. 3:2771 et seq. to seize dogs which were found running at large. LSA R.S. 3:2773 reads as follows:
“Dogs as personal property; seizure of dogs running at large; notice to owner; dangerous or vicious dogs
Dogs owned by citizens of this state and by citizens of other states and situated and located in this state are declared to be personal property of such citizens. However, any citizen may, and the sheriff, constable, or other such police officers of any parish, ward, or municipality shall, seize any dog found unaccompanied by its owner or keeper and running at large on any road, street or other public place, or trespassing on any premises other than the premises of the owner. If the dog is wearing a collar bearing a tag showing the name and address of its owner, it shall be impounded and the citizen or officer so seizing and im *1341 pounding the dog shall immediately thereafter by written notice notify the owner of the dog, at the address disclosed by the tag oh the dog’s collar, that the dog has been seized and impounded by him, and unless the owner or keeper of the dog shall, within seven days from the receipt of the notice, claim the dog and pay the citizen or officer a fee of one dollar for seizing and a fee of twenty five cents for each day it is impounded, it shall be disposed of in any humane manner. Any citizen or officer may kill any dangerous or vicious dog, and no citizen or officer shall be liable to damages or to prosecution by reason of killing any dangerous or vicious dog.”
The facts of the instant case simply do not fall within this statute. The dog in question was on the owner’s premises when the attack occurred. In this situation The Village of Florien had no duty to seize the dog.
QUANTUM
Plaintiff also contends that the award against Brian and Martha Foote of $8,813.03 in special damages and $50,000.00 in general damages was inadequate. The evidence indicates that Dustin required 116 sutures to close the wounds to his face. He thereafter required plastic surgery and psychological counseling. However, he has responded well and the medical testimony indicates he will have no significant residual scarring.
Plaintiff contends that the general damage award should have been $85,000.00 relying on St. Martin v. Maryland Casualty Company, 357 So.2d 885 (La.App. 1st Cir. 1978). In St. Martin the total award was $65,835.00 however, the general damage portion of this award was $60,000.00.
“The appellate review of awards for general damages is limited to determining whether the trial court abused its great discretion. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances peculiar to the case under review, having in regard also that the trier of fact has the advantage of seeing the witnesses and evaluating their testimony, including that of residual pain. The awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine, if the present award is greatly disproportionate to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case. In any event, an abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages.” Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974).
The instant case is distinguishable from St. Martin, supra, in that the child therein required approximately 300 sutures to close his wounds and even after corrective plastic surgery he would suffer from residual scarring, with only 50-60% improvement. The corrective surgery performed on Dustin has been relatively successful and his doctor has indicated there will be no significant residual scarring. Under these circumstances the award of general damages was appropriate.
For the above reasons the judgment of the trial court is affirmed at plaintiff-appellant’s cost.
AFFIRMED.
FORET, J., concurs in the result.