## No. 14,166.

### GUSTAVE FUSELIER VS. ST. LANDRY PARISH.

#### SYLLABUS.

1. Where a license levied under a parish ordinance, which was passed without the observance of some legal requirements, has been voluntarily paid, it can be recovered back on the ground of error only under exceptional circumstances. (*Multa fieri prohibentur quae si facta fierint obtinent firmitatem.*)

2. The fact that the State has fixed State licenses for pursuing occupations for six months at one-half of that for pursuing them for one year, does not carry with it the obligation on the part of the Police Jury to follow the same rule in fixing the parish licenses to be paid by dealers in distilled, alcoholic or malt liquors.

A PPEAL from the Sixteenth Judicial District, Parish of St. Landry. —*Lewis, J.*

*Charles F. Garland* and *Henry L. Garland, Jun.,* for Plaintiff, Appellant.

*Edward Benjamin DeBuisson,* for Defendant, Appellee.

The opinion of the Court was delivered by

NICHOLLS, C. J. The plaintiff has appealed from a judgment sustaining an exception of no cause of action filed to his demand and dismissing his suit. The following were his allegations:

That the Parish of St. Landry, through Marion L. Swords, Sheriff
and ex-officio tax and license collector, illegally and without right col-
lected, in *July, 1900,* from petitioner the sum of fifteen hundred dollars
for a half year license of retail liquor dealer, from July to December,
for the year 1900, and that in January, 1901, the said parish, through
its said sheriff and ex-officio tax and license collector, illegally collected
from petitioner the sum of two thousand dollars for the license of
retail liquor dealer for the year 1901.

That the said Parish of St. Landry was without warrant of law or
legal right to enforce the payment and collect said sums, for the reason
that the Police Jury of the Parish of St. Landry had not legally im-
posed a license on the business of retail liquor dealer for the years
1900 and 1901.

That for the year 1900 the Police Jury of said Parish of St. Landry,
at a regular meeting of said Police Jury, held on the 5th of December,
1899, made the budget of the estimate of expenditures of said parish
for the year *1900,* and at the same regular meeting, on same day and
date, adopted the revenue and license ordinance of the said Parish of
St. Landry for the year 1900, and that the said Police Jury of said
parish, at a regular meeting held on the 5th of December, 1900, made
the budget of the estimate of expenditures of said parish for the year
1901, and at the same regular meeting on same day and date adopted
the license ordinance for said Parish of St. Landry for the year 1901,
contrary to, in violation and utter disregard of the commands and
requirements of the provisions of the law in the case made and pro-
vided.

That the provisions of the law relating to the imposition of taxes
and licenses requires the Police Juries of the several parishes of the
State to make the budget of the estimate of expenditures of said par-
ishes for each year, and to publish said budget of expenditures in the
official organ of each parish for full thirty days before adopting the
revenue ordinances.

That the provisions of the law requiring the Police Juries to make
a budget of estimate of expenditures for each year and publish same
for full thirty days in the official organ of each respective parish before
adopting the revenue ordinance imposing taxes and licenses are
mandatory and must be strictly observed and rigidly complied with,
and that the failure of the Police Jury of the Parish of St. Landry to

do so for the years 1900 and 1901 strikes with absolute nullity the actions taken by the said Police Jury in the premises.

That he paid the said sums to the Sheriff and ex-officio tax and license collector of said Parish of St. Landry in error of fact and law, fully believing at the time of said payments that the said Police Jury of said Parish had complied with the provisions of the law and had legally imposed a license of two thousand dollars on the business of retail liquor dealer, and that petitioner only very recently discovered same after he had paid the said sums.

That at the time he paid the sum of fifteen hundred dollars for the half year license of 1900, then believing that the Police Jury of said Parish of St. Landry had legally imposed a license of two thousand dollars for the business of retail liquor dealer, he protested against the payment of said sum, contending that he had the right to obtain said license upon the payment of one thousand dollars, half of the amount of the full year license and that he paid the excess, viz.: five hundred dollars, under protest.

That the said Parish of St. Landry was without legal right to exact and demand more than half of the amount of the full year license and that the collection of the excess of five hundred dollars was without warrant of law and legal right.

That he is entitled to recover from the Parish of St. Landry the said amount, viz.: three thousand five hundred dollars paid by him to the Sheriff and ex-officio tax and license collector of the Parish of St. Landry during the years 1900 and 1901, in error of fact and law under the belief that the Police Jury of said Parish of St. Landry had legally imposed a license on the business of retail liquor dealer, which sums were illegally collected from petitioner by the said Sheriff and ex-officio tax and license collector of said Parish of St. Landry.

In the alternative, petitioner avers that, in the event that the court should decree that the Police Jury of said parish had sufficiently complied with the provisions of the law imposing the said licenses for the years 1900 and 1901, which is not admitted, but, on the contrary, specially denied, then in that event only, that he is entitled to recover said sum of five hundred dollars paid in excess for the half year license in the year 1900.

The premises considered, petitioner prays that the Police Jury of the Parish of St. Landry be duly cited to answer the demands herein made by serving copy hereof on William F. Clopton, the president of the

Police Jury of the Parish of St. Landry; that after due service, legal delays and due hearing had, that petitioner have judgment against and recover from the Parish of St. Landry the sum of three thousand five hundred dollars, with legal interest from judicial demand until paid; in the alternative, in the event the court should decree that the Police Jury had sufficiently complied with the provisions of the law relative to the licenses aforesaid, which is not admitted, but is, on the contrary, strenuously denied, then, in that event only, petitioner prays for judgment against the said parish in the sum of five hundred dollars, as aforesaid, with legal interest from judicial demand until paid. And petitioner prays for all orders and decrees necessary in the premises, for costs and general relief.

Plaintiff's suit was filed on the 9th of August, 1901. He relies upon Articles 2133, 2301, 2302, 2303, 2304 and 2306 of the Civil Code, which declare that "Every payment presupposes a debt; what has been paid without having been due is subject to be reclaimed. That cannot be reclaimed which has been voluntarily given in discharge of a natural obligation." (*C. C. 2133.*) "That he who receives what is not due to him, whether he receives it through error or knowledge, obligates himself to restore it to him from whom he has received it." (C. C. 2301.) "That he who has paid, through mistake, believing himself a debtor, may reclaim what he has paid" (C. C. 2302); that "a thing not due is that which is paid on the supposition of an obligation which did not exist or from which a person is released" (C. C. 2304); and that "the payment from which he might have been relieved by an exception that would extinguish the debt affords ground for claiming restitution."

He urges that the licenses for which he paid, under the license ordinances of the Parish of St. Landry, for the years 1900 and 1901, were not due, for the reason that the license ordinances themselves were null and void; for the reason that the Police Jury of St. Landry had failed to comply with the provisions of Section 2745 of the Revised Statutes, which enacts that the Police Juries of the several parishes of the State, before they shall fix and decide on the amount of the taxes to be assessed for the current year, shall cause to be made out an estimate exhibiting the various items of expenditure, and shall cause the same to be published in the official newspaper of the parish, or, in the parishes where an official newspaper is not published, then by posting up written statements of such estimates in at least three of the most public places in such parishes, at least thirty full days before their

meeting to fix and decide on the amount of taxes to be assessed as aforesaid. He contends that this section is mandatory and that it must be strictly and rigidly complied with, and he refers the court to James vs. City, 19 Ann. 190; Home Mutual Ins. Co. vs. City of New Orleans, 20 Ann. 447; State ex rel. Boatroue vs. Judge, 30 Ann. 420; State ex rel. Neugass vs. City, 38 Ann. 121; Wilson vs. Anderson, 28 Ann. 261; Parish of Lincoln vs. Huey, 30 Ann. 1244; Police Jury vs. Bouanchaud, 51 Ann. 866; State vs. Lockett, 52 Ann. 1620, and Constant et al. vs. Parish of East Carroll, 105 La. 286; Tucker on the Constitution, Vol. 1, p. 75. He insists that there is no natural obligation to pay a license where none is either legally or constitutionally imposed; that the obligation to pay a license is statutory and falls with the statute; that payment in error is a sufficient basis for recovery without allegations of proof that a suit for prosecution had been entered against him.

In support of his prayer for alternative relief he submits that Article 229 of the Constitution of 1898 only grants the power to Police Juries to impose on retail dealers a greater license tax than that imposed by the Legislature for State purposes. That the grant of power is limited to that only. Having been granted by the Constitution the sole power to impose a license tax larger than that imposed by the Legislature, it cannot pass any laws in contravention of State laws and of the rights thereunder granted. That State law granting the right to take out a license upon payment of half of the whole year's license, he was entitled to have obtained a license upon the payment of $1,000. This branch of plaintiff's claim is based upon the provisions of Section 18 of Act No. 171 of 1898 (the State License Act of that year), which, after classifying the different occupations on which licenses are to be paid and fixing the amount of the licenses, declares by way of proviso, "that any person commencing business after the first of July, peddlers excepted, shall pay one-half of the rates."

The license ordinances of St. Landry are not in the record, but we infer from plaintiff's complaint that the parish imposed a license of two thousand dollars for selling liquor for a year, and fifteen hundred dollars, instead of one thousand dollars, for a half year.

The defendant, on the other hand, refers the court to Article 2303 of the Civil Code, which makes it a condition of the right to recover an amount of money *voluntarily* paid, but paid through error, that "the thing paid should not be due in any manner, either civilly or naturally; that a natural obligation to pay will be sufficient to prevent recovery."

It maintains that money paid for taxes in pursuance of laws illegally or informally enacted or ordained cannot be recovered back in this State, on the ground that the payment was made in error, because there was a natural obligation on the part of the tax debtor to make the pay-ment. Counsel cite, as sustaining the position, Campbell vs. New Orleans, 12 Ann. 34; Bank vs. New Orleans, 12 Ann. 421; Factors and Traders' Insurance Company vs. New Orleans, 25 Ann. 454; Civil Code 1757, 1758, 1759, 2302, 2303 and Article 18 of the Code of Practice. He contends that the coercion or duress which will render a payment of taxes involuntary must in general consist of some actual or threatened exercise of power possessed or believed to be possessed by the party exacting or receiving the payment over the person or the property of another from which the latter has no means or reasonable means of immediate relief except by payment, and cites Dillon on Municipal Corporation, 4th Ed., Sec. 943; Union Pac. R. R. Co. vs. Dodge Co. Commissioners, 98 U. S. 541, and Factors and Traders Ins. Co. vs. New Orleans, 25 Ann. 459.

Referring in his brief to the claim made alternatively by the plain-tiff that the parish was without authority to exact for pursuing the business of selling lquor for half a year more *than one-half* of that exacted for the *whole year,* defendant's counsel, after copying Article 229 of the Constitution, which provides that "no political corporation shall impose a greater license tax than is imposed by the General Assembly for State purposes. This restriction shall not apply to dealers in distilled alcoholic or malt liquors," says in his brief: "The prohibition contained in the first sentence quoted had, by the force and the effect of the exception contained in the exception, no application to dealers in distilled liquors. Plaintiff's complaint is that Police Juries have no right to exact from persons commencing business after July 1st more than half the amount levied for the whole year. This com-plaint is evidently founded upon the proviso of Section 18 of Act No. 171 of 1898, which reads as follows:

" 'Provided, that any person commencing business after the 1st of July, peddlers excepted, shall pay one-half of the above rates.' The proviso itself does not purport to deal with the rights or powers of municipal corporations. It has reference exclusively to State licenses and only affects municipal corporations through and by virtue of Article 229 of the Constitution. If the prohibition contained in said article against the right of any municipal corporation to levy a greater

license tax than is levied by the General Assembly for State purposes has no application to dealers in distilled alcoholic or malt liquors, neither has the above quoted proviso."

Referring to the protest made by plaintiff at the time of his paying the fifteen hundred dollars as a license for pursuing his business for six months, counsel makes the following quotation from Dillon on Municipal Corporations, 4th Ed., Sec. 943:

"The coercion or duress which will render a payment of taxes involuntary must in general consist of some actual or threatened exercise of power possessed or believed to be possessed by the party exacting or receiving the payment, over the person or property of another from which the latter has no other means or reasonable means of immediate relief, except payment." (See Sections 940 and 949.)

In the case at bar the only protest made by the plaintiff was as to the excess of "five hundred dollars" on the claims made for the license for six months. Plaintiff conceded the right of the parish to claim one thousand dollars for that license.

We may here state that if the parish was authorized to demand at that time any license whatever, it was entitled to demand, as it did, fifteen hundred dollars. The position taken by the parish on that subject is legally correct.

The claim made by the plaintiff on the first branch of the case is not that the Parish of St. Landry did not adopt a budget for the years 1900 and 1901, but that the license ordinances for those years were adopted prematurely; that is to say, before thirty days had elapsed after the date of the publication of the budgets. It is claimed that the ordinances so prematurely adopted are absolutely null and void and of no effect, as the provisions of Article 2745 of the Revised Statutes on that subject are mandatory.

If the plaintiff's proposition be true and he be entitled to recover the amount of the licenses paid by him under the circumstances of this case, it is evident that every other person who has paid parish taxes under the ordinances can do likewise, and the financial affairs of the parish be entirely upset for their benefit. On the strength of the silence and acquiescence of the taxpayers in the legality of the ordinances, debts have been created and paid which, but for such acquiescence, would not have been created and paid.

If the Parish of St. Landry, with its limited power of taxation, be forced to refund to the taxpayers of the parish the taxes received and

disbursed by it, presumably for the good of its people, it will be placed in a position which we do not think the lawmaker could have possibly contemplated as the result of a mere failure to enact the ordinances at the precise time designated by the statute.

This far-reaching effect which it is claimed should be given to a non-compliance with the exact terms of the statute is based upon the theory that the purpose of the requirement referred to was intended to enable the taxpayers to bring moral suasion to bear upon the Police Juries in fixing the amount of licenses or taxes. We cannot believe, as we have said, that the General Assembly ever intended such deplorable and disproportionate consequences to follow from a mere irregularity or informality which could be easily reached and remedied in other ways. In Campbell vs. The City of New Orleans, 12 Ann. 34, this court held that, where a tax levied under a municipal ordinance passed without legal formalities has been voluntarily paid, it cannot be recovered back on the ground of error.

That there being no law exempting the plaintiff's property from taxation for the purposes contemplated by the ordinance, he was under a natural obligation to contribute his quota to the support of the municipal corporation from which he derived protection. That no suit will lie to recover what is paid or given in compliance with a natural obligation. This conclusion was evidently reached by the court after mature deliberation and discussion, as Mr. Justice Buchanan dissented upon the express ground that there was no legal obligation to pay a tax illegally imposed.

In the body of the opinion the court said: "It did not appear that the tax collector had any compulsory warrant or execution in his hands against the plaintiff." What the informality in the tax ordinance in that case was, does not appear, but the court declared that the property taxed was not *exempted* from payment of the tax. Proceeding, the court said: "Although it may be true that a perfect obligation to pay did not arise, for want of regularity in the ordinance imposing the tax, still, as the plaintiff voluntarily paid, without protest, a sum naturally due, he cannot now reclaim it on the plea of error." Such obligations as the law has rendered invalid for want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust, form one class of natural obligations. Civil Code (1751, No. 1).

"The municipal authorities were virtually the plaintiff's agents for the purpose of levying such an assessment upon his taxable property as would defray his share of the necessary expense of police, etc. They levied the assessment upon property legally liable to taxation, but in doing so neglected to pursue certain prescribed forms, a neglect which would have rendered the plaintiff's obligation to pay invalid *in foro legis,* if he had raised the objection in time and in the proper manner."

The syllabus of Bank of New Orleans vs. City of New Orleans, 12 Ann. 424, is to the effect that where payment has been made of a tax which might have been resisted at law, the money cannot be recovered, if the tax is on property, whether exempt from general taxation or not, and the assessment is rather a toll or contribution, and the party paying has derived a direct benefit from the improvements made by the imposition of the tax or assessment, nor where the property was liable to taxation and the illegality of the tax depends upon some informality in the passage of the law establishing the tax.

In Factors & Traders Insurance Co. vs. The City of New Orleans, 25th Ann. 454, the same question was submitted to this court, and the principles announced in Campbell vs. New Orleans were reaffirmed. The court reviewed at some length the opinion delivered in that case, saying: "In that case, as in this, Campbell paid to the tax collector a certain sum of money as his city tax for the year 1850. In that case, as in this, it did not appear that the money was paid under any compulsory warrant or execution. It is alleged here that if plaintiffs had not paid they incurred the risk of having their place of business closed, but it is not shown that they had been condemned to pay by any authority. In that case, as in this, there was a judgment in a suit between the city and another party defendant declaring that the ordinance under which the tax was proposed to be collected of him was unconstitutional." * * * The court held in that case that, although the municipal authorities had neglected, in enacting the ordinance, to pursue certain prescribed forms, a neglect which would have rendered the plaintiff's obligation to pay invalid *in foro legis,* if he had raised the objection in time and in the proper manner," yet having voluntarily paid the tax, it could not recover.

The court noticed the fact that "in one particular the controversy between Campbell and the city differed from that then before it," in this, that, whereas Campbell paid without objection or protest and sought only to recover after it had been decided in a controversy be-

tween another person and the city that the ordinance was unconstitutional, in the case before it the plaintiff before making the last payment expressly stipulated with the city treasurer, to whom the money was paid, that it should be returned in case the court should determine the case of the city against another insurance company in a certain sense, but in reference to this it said: "Still there was not any coercion on the part of the city under force of which this payment was made. There was not execution in the hands of the Sheriff by which their property could have been seized in case they did not pay.

"They paid, not because they were forced to pay, but because they chose to pay. They aver, it is true, that they were threatened with the close of their place of business in case they did not pay, but their relief from this apprehension was not by paying—on the contrary, it was by resisting paying, as the company did in the case upon the decision of which they were content to rest their obligation. The stipulation with the treasurer amounted to nothing, as it was not shown that he had any authority to make the contract on the part of the city which plaintiff had set up. If he was not able to bind the city, the stipulation he made was not obligatory. The majority of the court held that there was unquestionably a natural obligation on the part of the plaintiff to pay its *pro rata* of taxes, and rejected his demand. In the present case the plaintiff paid voluntarily the license demanded, except for the sum of five hundred dollars, and the objection which he urged to that particular portion of the license was one which we have just held was not well grounded.

Had the plaintiff promptly urged the objections which he now advances against the ordinances *non constat* but that the Police Jury would not have immediately re-enacted them so as to make their action exactly conform to the law. He did nothing of the kind. By payment he avoided the injunction which probably would have been taken, preventing him from pursuing his business without a license, and which would have determined at once the issues which he now seeks to raise, placed himself in a position which he would otherwise not have occupied, reaped all the benefits to himself resulting from that position by pursuing his business without interruption for over a year and a half, and now, after the advantages which he derived from following the course he did can no longer be taken from him

seeks to repudiate the instrumentality or means through which alone he was able to obtain them.

We say, as did the court in the Campbell case, and that of the Factors and Traders Insurance Company, that if the plaintiff had any objections to urge, they should have been urged at a proper time and in a proper manner. He cannot for his individual benefit throw the finances of the parish into inextricable confusion; he is estopped at this late day, after so many rights have accrued on the strength of his acquiescence and that of the other taxpayers of the parish, from disturbing the present situation. *Multa fieri prohibentur quae si facta fuerint obtinent firmitatem.*

Wilson vs. Anderson, 28 Ann. 261; Parish of Lincoln vs. Huey, 30 Ann. 1244, and Police Jury vs. Bouanchaud, 51 Ann. 866, were cases where the defendant was resisting payment of a license and not seeking to recover money already paid for obtaining one. State vs. Lockett, 52 Ann. 1620, has no particular bearing in the present litigation. Constant Benjamin & Co. vs. Parish of East Carroll, 105 La. 286, was a case to recover back money paid for a license, but the facts of the case are unlike those in the one before us, as will be seen by reading the opinion. The money was paid under protest and under circumstances entirely different from those disclosed by the pleadings here.

We think the judgment appealed from was correct, and it is hereby affirmed.

Rehearing refused.