OVERTON, J.
 

 Section 12 of article 14 of the Constitution provides that—
 

 
 *273
 
 “Except as otherwise provided in this Constitution, no municipal tax, for all purposes whatsoever, shall exceed, in any one year, seven mills on the dollar of assessed'valuation; provided, that where any municipality is, hy its charter or by law, exempt from payment of parish taxes or, under legislative authority, maintains its own public. schools, it may levy an annual tax not to exceed ten mills on the dollar of assessed valuation. This section shall not apply to the city of New Orleans.”
 

 The city of Opelousas does not claim that it comes within the proviso of this article. Nevertheless, its mayor and board of aider-men levied, by ordinance, for general revenue purposes, for each of the years 1922, 1923, and 1924, a tax of eight mills on the dollar, on the assessed valuation of all property subject to taxation within the city. The tax, to the extent of 1 mill for each of said years, was levied indisputably in violation of. the prohibition contained in the section of the Constitution, quoted above.
 

 The plaintiffs in this suit, four in number, paid the eight mill tax levied for each of said years. In September, 1925, they discovered that they had paid an eight mill tax instead of a seven mill tax, and made demand on the city to refund them the excess exacted of them and paid. The city refused to refund the excess' demanded, and plaintiffs then instituted this suit to recover it. Their contention is that, when they made payment, they were unaware of the fact that this excess had been exacted of them; that they paid it in error; and that the error was superinduced by fraud. The city denies that it is indebted to plaintiffs for any part of the tax collected by it; denies that it fraudulently collected any part of said tax; and avers that the tax was paid by plaintiffs without duress or compulsion, and hence voluntarily; and that, having been so paid, and having been disbursed, no part thereof can be recovered.
 

 This court in a number of cases has had occasion to consider the right of a taxpayer to recover a tax paid by him on the ground, that the tax was illegally exacted, or upon other grounds. In New Orleans Canal & Banking Co. v. City of New Orleans, 30 La. Ann. 1371, it was said with reference to the right of recovery, quoting from Dillon on Municipal Corporations, that, to justify the claimant’s action, three principal facts must concur, to wit:
 

 “The authority to levy the tax must be wholly wanting, or the tax itself wholly unauthorized; in which eases the assessment is not simply irregular, but absolutely void. 2. The money sued for must have been actually received by the defendant corporation, and received by it for its own use, and not as an agent or instrument to assess and collect
 
 money for the
 
 benefit of the state, or other public corporation or person; and 3, the payment by the plaintiff must have been made-upon compulsion, to prevent the immediate seizure of his goods or the arrest of the person, and not voluntarily. Unless these conditions concur, paying under protest will not give a right of recovery. The same principles are applicable to actions for the re eovery back of money paid for illegal license taxes or fines imposed by a municipal court.”
 

 And in Fuselier v. St. Landry Parish, 107 La. 221, on page 227, 31 So. 678, 680, quoting from Dillon on Municipal Corporations (4th Ed.) § 943, it was said, with reference to what the coercion or duress must consist of to render the payment of the tax an involuntary payment, that — ■
 

 “The coercion or duress which will render a payment of taxes involuntary must in general consist of some actual or threatened exercise of power, possessed or believed to be possessed by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means or reasonable means of immediate relief except payment.”
 

 In the case at bar, the tax, in so far as it exceeded seven mills on the dollar, as said, was clearly levied in contravention of the section of the Constitution, quoted supra, and hence to that extent was void. Therefore plaintiffs’ case is in accord with the first condition necessary for a recovery, as laid down in the rule, quoted above. The tax, in so far as it exceeded seven mills on the dollar, was
 
 *275
 
 actually received by the city, and for its own use. Therefore, plaintiffs’ case is in accord with the second condition necessary for a recovery, as laid down in the rule quoted above. But, barring for the time being the questions raised relating to error and fraud, plaintiffs fail when it comes to -the third condition necessary to recover, stated in the foregoing rule, if that rule is to be applied, for it does not appear that the tax, or any part of it, was paid under duress or coercion. In fact, it is conceded, in effect, that no part of the tax was so paid. However, plaintiffs contend that the rule, relative to payment under duress or coercion, has no application to the facts of this c-a'se. Their contention is that they are entitled to recover under article 18 of the Code of’ Practice, and under articles 2133 and 2302 of the Civil Code. The article of the Code of Practice, relied on, reads:
 

 “He who pays through error what he does not owe has an action for the repetition of what he has thus paid, unless there was a natural obligation to make such payment; but he must prove that he paid through error, otherwise it shall be presumed that he intended to give.”
 

 Article 2133 of the Civil Code, relied upon by plaintiffs, reads:
 

 “Every payment presupposes a debt; what has been paid without having been due, is subject to be reclaimed.
 

 “That cannot be reclaimed that has been voluntarily given in discharge of a natural obligation.”
 

 Article 2302 of the Civil Code, also relied on by plaintiffs, reads:
 

 “He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.”
 

 To these we may add article 2303 of the Civil Code, in order to more fully state the law. This article reads:
 

 “To acquire this right [that is, the right to reclaim], it is necessary that the thing paid be not due in any manner, either civilly or naturally. A natural obligation to pay will be sufficient to prevent the recovery.”
 

 Plaintiffs contend that there is neither a civil nor a natural obligation to pay such part of a tax as may be levied in excess of the tax permitted by the Constitution. In this, we think that plaintiffs are correrct, and, were these codal articles applicable to their full extent to this case, plaintiffs, to say the least, would have a strong case. But these articles have little or no application in determining the right of one to recover taxes paid by him on the ground that the taxes were illegally levied and were paid in error by him. This was held, as relates to the articles of the Civil Code, quoted above, in Lisso & Bro. v. Police Jury, 127 La. 283, 53 So. 566, 31 L. R. A. (N. S.) 1141, and in Simpson v. City of New Orleans, 133 La. 384, 63 So. 57, and the ruling is equally applicable to the article of the Code of Practice, quoted above. The ruling, just stated, is correct, because the laws regulating the collection of taxes and the right to recover any part of them, after payment has been made, are, we might say, in the very nature of things sui generis. Taxes are supposed to be levied only to the extent necessary to defray the expenses for which they are levied. After the taxes have been collected, it would be unreasonable, if not disastrous, to permit a taxpayer, after he has made payment, without having been coerced to do so, to recover the taxes paid by him, on the ground that the levy was unconstitutional or illegal. If the law permitted one taxpayer to do «o, it would necessarily have to permit all taxpayers to do likewise, and what would be the result? As government is dependent on taxation for its maintenance, the local subdivision that levied the illegal or unconstitutional tax would have to tax the taxpayers to raise the necessary money to return to them the illegal or unconstitutional tax collected. In other words, the taxpayers would have to be paid the illegal tax, paid by them, out of their own pockets. Such a ceremony would be idle and vain. Obviously, the proper course for a taxpayer to pur
 
 *277
 
 sue, under such circumstances, is to investigate the legality and constitutionality of the tax before he makes payment, and, if he finds that it is illegal or unconstitutional, and is not willing to pay it, then to make use of the means provided by law to prevent the enforcement of the tax. If he fails to make such investigation, and pays the tax on the supposition that it is legal and constitutional, he has no right to come into court to recover it on the theory that he paid it in error. As aptly said in Simpson v. City of New Orleans, cited supra (133 La. 384, 63 So. 57), quoting from Cooley on Taxation:
 

 “Every man is supposed to know the law, and, if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it back. * * * Mistake of fact can scarcely exist in such a case except in connection with negligence, as the illegalities which render such a demand a nullity must appear from the records, and the taxpayer is just as much bound to inform himself what the records show or do not show as the public authorities.”
 

 As relates to the contention that the tax, in so far as it exceeded the constitutional limitation, was fraudulently levied and collected, it is sufficient to say that we do not find this contention sustained. The mayor and board of aldermen were simply in error as to the number of mills they could levy for general revenue purposes. The ordinance, adopted each year, levying the taxes, showed that the tax levied for the year, for general revenue purposes, was eight mills on the dollar. However, for the year 1924, due to an •error of the printer in printing the sheets for the rolls and the tax receipts, the general revenue tax was shown thereon as a tax. of .five mills on the dollar, and a special tax for the redemption of public improvement bonds was shown thereon as an eight mill tax, when the tax for general revenue should have appeared on the rolls and receipts as an eight mill tax, and the special tax should have been shown as a five mill tax. Plaintiffs argue that there was an attempt here, on the part of the city authorities, to conceal the fact that they had levied an eight mill tax for general revenue purposes. We do not so conclude. The showing of the eight mill tax as a special tax was merely due, as stated, to an error of the printer, which was evidently deemed, as it in fact was, harmless. The error could have scarcely served to deceive, as a majority of the taxpayers must have known what the number of mills of the special tax was, and, moreover, the error was one that was readily detectable by reference to the ordinance, levying the taxes.
 

 Our conclusion is that, having paid the tax without coercion, plaintiffs cannot reeoyer.
 

 For the reasons assigned, the judgment appealed from is affirmed; appellants to pay the costs of this appeal.