23 So.2d 224

**A. SULKA & CO. v. CITY OF NEW ORLEANS.**

No. 37566.

June 5, 1945.

Rehearing Denied July 17, 1945.

Francis P. Burns, City Atty. and William Boizelle, Asst. City Atty., both of New Orleans, for appellant.

Weiss & Weiss, of New Orleans (Dobin Friedman, of New Orleans, of counsel), for appellee.

HAWTHORNE, Justice.

Plaintiff, A. Sulka & Company, instituted this suit attacking the constitutionality of an ordinance of the City of New Orleans and seeking to recover the sum of $250, the amount of a license tax paid thereunder.

Plaintiff, a corporation organized and existing under the laws of the State of New York, with its domicile and principal place of business in New York City, alleges in its petition that on or about February 11, 1939, its travelling representative, one William S. Ligon, leased a room in a hotel in the City of New Orleans for the purpose of displaying samples and taking orders for the future delivery of merchandise sold by plaintiff, and that said representative did not make any delivery of such merchandise or accept any payment therefor, his sole function being to take orders and forward them to New York, subject to the approval of plaintiff, and that, in the event said orders were accepted, the merchandise was shipped from the home office in New York through interstate commerce, and was charged to the accounts of the purchasers or shipped C.O. D.; that on or about February 15, 1939, the City of New Orleans made demand upon plaintiff's representative engaged in the aforesaid business for the payment of $250 for a license to carry on said business, under the terms and provisions of an ordinance of the City of New Orleans, and that, under threats of criminal charges, closing said display room, or seizing plaintiff's merchandise, its representative paid the sum of $250 and was issued a license by the City of New Orleans, under the authority of said ordinance; that the amount of said license was paid under protest by a check, on the reverse side of which there appears an endorsement stating that it was paid under protest.

Plaintiff further alleges that the ordinance under which the license payment was demanded and made was and is unconstitutional, null, and void, and in violation of, and in conflict with, the provisions of Section 8 of Article I of the Constitution of the United States, being an interference with, and a burden upon, interstate commerce, and that a Louisiana statute to the same effect has been declared unconstitutional by the Supreme Court of the State of Louisiana and a similar statute declared unconstitutional by the Supreme Court of the United States; that counsel for plaintiff made demand upon the City of New Orleans for the refund of the amount of said license tax, and that the City, in reply thereto, stated that a check to cover said refund would be forthcoming within the next few weeks; that some months thereafter, in reply to numerous demands for this refund, the City of New Orleans changed its position and declined and refused to refund the amount of the license tax so paid.

Plaintiff prays for judgment against the City of New Orleans in the full sum of $250, with legal interest thereon from February 15, 1939, until paid.

An exception of no cause or right of action and a plea of prescription were filed by the City, both of which were referred to the merits by the trial judge. The City's answer filed herein denies the material allegations of plaintiff's petition.

After trial on the merits, judgment was rendered in favor of plaintiff as prayed for. Thereupon the City applied for, and was granted, a suspensive appeal, and we now have the matter before us for consideration.

The record discloses that the City of New Orleans issued the license to plaintiff's representative on February 15, 1939, and received in payment therefor a check issued by the plaintiff, with the endorsement on the reverse side thereof "paid under Protest", and that thereafter, on June 27, 1939, plaintiff addressed a letter to the Commissioner of Public Finance for the City of New Orleans, requesting refund of the amount so paid for said license, urging as a reason therefor the fact that a similar state act had been declared unconstitutional. In answer to this letter, the City informed plaintiff that the decision of the court declaring unconstitutional the state statute in question had not become final, and that same was to be appealed to this court, and further informed plaintiff that if, on appeal, this court should declare the state statute unconstitutional, then the City of New Orleans would adopt an ordinance for the refund of the sum paid by plaintiff for the license tax.

Plaintiff through counsel thereafter informed the City that the state statute in question had been declared unconstitution-

al by the Louisiana Supreme Court, and made further demand for the refund of the amount paid for the license under the city ordinance. After some correspondence on this subject between the parties to this litigation, and after the City had failed and refused to make the refund, plaintiff on September 12, 1941, instituted this suit.

That portion of Section 22 of Ordinance No. 14,815, Commission Council Series for the year 1939, under which the license tax in question was paid by plaintiff, reads as follows:

"* * * Provided, further, that every person, firm, or corporation, not being a regular retail merchant in the State of Louisiana, who shall display samples, models, goods, wares or merchandise in any hotel, hotel room, store, storehouse, house or other place, for the purpose of securing orders for the retail sale of such goods, wares or merchandise, or others of like kind or quality, either for immediate or future delivery, shall apply for and procure, at least thirty days in advance, a license from the City of New Orleans for the privilege of displaying such samples, models, goods, wares or merchandise, and shall pay, in addition to all other taxes and licenses, a license tax therefor of $250.00 for each sixty days of any such display. * * *"

Defendant's exception of no cause or right of action and plea of prescription are based on the fact that the plaintiff herein failed to allege and prove that it complied with the terms of Act No. 330 of 1938, which provide that, at the time of payment of the license tax, notice must be giv-

en of intention to file suit, and suit must be filed within a period of 30 days thereafter.

It is true that the license tax in question was paid on February 15, 1939, and that at that time plaintiff failed to give notice of its intention to file suit. And, in truth and in fact, the suit was not filed until September 12, 1941, over two years after the payment of the tax.

Plaintiff contends that Act No. 330 of 1938 is not exclusive, for the reason that this act provides in Section 3: "* * * nor shall this Act be held to repeal or affect any right under Act 16 of the Second Extraordinary Session of 1934, nor Act 23 of the Second Extraordinary Session of 1935"; and, in brief only, contends that the 1938 act is entirely inapplicable inasmuch as it can constitutionally provide a remedy for recovery only where interstate commerce is not concerned.

It is true that plaintiff alleges in its petition that its representative paid the amount of the license tax in this case under threats of criminal charges and seizure of its goods, made by the City of New Orleans, its officers or employees. However, on the trial of the case on its merits, plaintiff has failed to prove that any such threats were made. In fact, its representative, William S. Ligon, testified that the reason he paid the tax was that the License Department of the City of New Orleans sent him word to come to its office and pay such license, and that, pursuant to said request, he delivered the check in payment thereof to Mr. Charles Farrell in the License Department, stating that he objected to paying said tax and that same was paid under protest. However, as stated hereinabove, the record is barren of any evidence whatsoever that threats of any nature were made by the City or its employees.

■ The general rule is that, in the absence of a special statute authorizing recovery of a tax paid under facts and circumstances such as exist in this case, money thus paid may not be recovered. City of New Orleans v. Jackson Brewing Co., 162 La. 121, 110 So. 110; Fuselier v. St. Landry Parish, 107 La. 221, 31 So. 678; Lisso v. Police Jury, 127 La. 283, 53 So. 566, 31 L.R.A.,N.S., 1141; Simpson v. City of New Orleans, 133 La. 384, 63 So. 57; Central Savings Bank & Trust Co. v. City of Monroe, 194 La. 743, 194 So. 767.

Section 18 of Article X of the Louisiana Constitution of 1921 reads as follows:

"The Legislature shall provide against the issuance of process to restrain the collection of any tax and for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him."

Pursuant to this mandate of the Constitution, the Legislature adopted Act No. 16 of the Second Extraordinary Session of 1934, which act was amended and re-enacted by Act No. 23 of the Second Extraordinary Session of 1935.

The 1934 act, as amended and reenacted by the act of 1935, provided against the issuance of any process to restrain the collection of any tax by the State of Louisiana or by any political subdivision thereof, but evidently failed to provide an ade-

quate remedy at law for the prompt recovery of a tax paid under protest. In the case of Texas Co. v. Wilkinson et al., and Magnolia Petroleum Co. v. Same, 21 F.Supp. 771, decided on December 23, 1937, by the United States District Court for the Eastern District of Louisiana, an interlocutory injunction to restrain the collection of a tax was issued, and in issuing said injunction, the court held that this act, as amended and reenacted, did not provide an adequate remedy for the recovery of such taxes.

Shortly thereafter, Act No. 330 of 1938 was adopted by the Legislature, which act reads as follows:

"An Act to amend and re-enact Act 16 of the Second Extraordinary Session of 1934 (amended by Act 23 of the Second Extraordinary Session of 1935) entitled, as amended, 'An Act to carry into effect Section 18, Article X of the Constitution of Louisiana, and to provide against the issuance of process to restrain the collection of any tax and for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him.'

"Section 1. Be it enacted by the Legislature of Louisiana, That Act 16 of the Second Extraordinary Session of the Legislature of 1934 (amended by Act 23 of the Second Extraordinary Session of 1935) *be amended and re-enacted so as to read as follows:*

"An Act to carry into effect Section 18, Article X of the Constitution of Louisiana, and to provide against the issuance of process to restrain the collection of any tax and for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him.

"Section 1. Be it enacted by the Legislature of Louisiana, That no court of this State shall issue any process whatsoever to restrain the collection of any tax imposed by the State of Louisiana, or by any political subdivision of the State of Louisiana, under authority granted to it by the Legislature or by the Constitution.

"Section 2. (a) A right of action is hereby created to afford a remedy at law for any person aggrieved by the provisions of this Act; and in case of any such person resisting the payment of any amount found due, or the enforcement of any provision of such laws in relation thereto, *such person shall pay the amount found due by the officer designated by law for the collection of the said tax and shall give the officer notice, at the time, of his intention to file suit for the recovery of the same; and upon receipt of such notice, the amount so paid shall be segregated and held by the officer designated by law for the collection of the tax for a period of thirty (30) days; and if suit be filed within such time for the recovery of such amount, such funds so segregated shall be further held, pending the outcome of such suit.* If the person prevails, the officer designated by law for the collection of the tax shall refund the amount to the claimant, with interest at the rate of 2% per annum covering the period from the date said funds were received by the officer designated by law for the collection of said tax to the date of refund.

"(b) This Section shall afford a legal remedy and right of action in any State or federal court having jurisdiction of the parties and subject-matter, for a full and complete adjudication of any and all questions arising in the enforcement of this Act, as to the legality of any tax accrued or accruing or the method of enforcement thereof. In such actions, service of process upon the officer designated by law for the collection of the tax shall be sufficient service, and he shall be the sole necessary, and proper party defendant in any such suit.

"(c)· *This Section shall be construed to provide a legal remedy in the State or federal courts, by action at law, in case such taxes are claimed to be an unlawful burden upon interstate commerce, or the collection thereof, in violation of any Act of Congress or the United States Constitution, or the Constitution of the State of Louisiana,* or in any case where jurisdiction is vested in any of the courts of the United States; provided, that upon request of a person and upon proper showing by such person that the principle of law involved in an additional assessment is already pending before the courts for judicial determination, the said person, upon agreement to abide by the decision of the courts, may pay the additional assessment under protest, but need not file an additional suit. In such cases the tax so paid under protest shall be segregated and held by the officer designated by law for the collection of the said tax until the question of law involved has been determined by the courts and shall then be disposed of as therein provided.

"Section 3. This Act shall not be held to repeal any law providing that taxpayers shall have the right of testing the correctness of their assessments before the courts of the State, except insofar as such laws or parts of laws may be in conflict with this Act; *nor shall this Act be held to repeal or affect any right under Act 16 of the Second Extraordinary Session of 1934, nor Act 23 of the Second Extraordinary Session of 1935.*" (Italics here and elsewhere in this opinion are ours.)

*Plaintiff* contends that the above quoted act is not exclusive, and that, under the provisions of Section 3 which we have quoted and italicized, Act No. 16 of the Second Extraordinary Session of 1934, as amended by Act No. 23 of the Second Extraordinary Session of 1935, is still in full force and effect, and that, under the provisions of Section 2, subd. 5(b) of Act No. 23 of the Second Extraordinary Session of 1935, it is provided with a remedy or a means for recovery of the amount of the license tax so paid. This section of the 1935 act, upon which plaintiff relies for recovery, provides:

"A certified copy of any final judgment against any tax collector of any parish, municipality or taxing district of the State, or against any such parish, municipality or taxing district, shall be furnished by the tax debtor to the governing authority of such parish, municipality or taxing district, and shall be included in their next forth-coming budget and paid in the manner provided by law; * * *."

Sections 1 and 3 of Act No. 23 of the Second Extraordinary Session of 1935 read as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That Act No. 16 of the second extraordinary session of the Legislature of 1934, approved November 21, 1934, be amended and re-enacted so as to read as follows:"

"Section 3. This Act shall not be held to repeal any law providing that taxpayers shall have the right of testing the correctness of their assessments before the courts of the State, except insofar as such laws or parts of laws may be in conflict with this Act; *nor shall this Act be held to repeal or affect any right under Act No. 16 of the third [second] extraordinary session of 1934,* approved November 21, 1934."

It is to be noted that the language of the italicized portion of Section 3 of this act is identical with that of Section 3 of the 1938 act, quoted and italicized hereinabove (with the exception, of course, that the latter includes Act No. 23 of the Second Extraordinary Session of 1935). Therefore, if Section 3 of the act of 1935 did not "repeal or affect any right under" the 1934 act, it naturally follows that the same is true with reference to Section 3 of the 1938 act insofar as the 1934 and 1935 statutes are concerned. In adopting Act No. 23 of the Second Extraordinary Session of 1935, the Legislature, after providing in Section 1 that same was to amend and re-enact Act No. 16 of the Second Extraordinary Session of 1934 "so as to read as follows", incorporated *word for word* the entire 1934 act, adding two paragraphs, Nos. 5 and 6, to Section 2. It therefore follows that all the rights and remedies granted by the 1934 act to a taxpayer for the recovery of any illegal tax were granted by, and were specifically set out in, the 1935 act.

It naturally follows, of course, that, when the Legislature in Section 3 of the 1935 act used the words "nor shall this Act be held to repeal or affect any right under Act No. 16 of the third [second] extraordinary session of 1934", it could not possibly have intended that the 1934 act should continue in force and effect to provide any right or remedy in a cause of action arising after the effective date of the 1935 act, since all these rights and remedies were already set out and incorporated in the 1935 act.

This brings us to the conclusion that this portion of Section 3 of the 1935 act is nothing more than a saving clause, and that it was the purpose and intention of the Legislature, under the provisions of said section, to preserve to any taxpayer any existing rights and remedies under the act of 1934 for the recovery of any illegal tax paid by him while the 1934 act was in force and effect. And what is said in State ex rel. Crow v. City of St. Louis, 174 Mo. 125, 73 S.W. 623, 629, 61 L.R.A. 593, with reference to a saving clause is applicable here, that is:

"* * * it is ordinarily a restriction in a repealing act, and saves rights, pending proceedings, penalties, etc., from the annihilation which would result from unrestricted repeal."

It therefore follows that that portion of Section 3 of Act No. 330 of 1938 to the same effect and in the identical language (with the exception that same in-

cludes Act No. 23 of the Second Extraordinary Session of 1935) is also nothing more than a saving clause and does not preserve, provide, or create any additional right and remedy to the taxpayer for the recovery of any illegal tax under the terms of Act No. 16 of the Second Extraordinary Session of 1934, as amended and re-enacted by Act No. 23 of the Second Extraordinary Session of 1935. In so construing Section 3 of the 1938 act, we have followed the rule as set forth in Article 17 of the Revised Civil Code, as follows:

"Laws in pari materia, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another."

According to its title, Act No. 330 of 1938 is an act "To amend and re-enact Act 16 of the Second Extraordinary Session of 1934 (amended by Act 23 of the Second Extraordinary Session of 1935)", and in Section 1 thereof it provides that the two acts in question shall "be amended and re-enacted so as to read as follows". The title and Section 1 thereof are identical with those of the earlier acts. The 1938 act then amends and re-enacts the previous acts, section by section, changing, however, the remedy, procedure, terms, and provisions of Section 2 of the previous acts. It is therefore evident that the words "be amended and re-enacted so as to read as follows" in Section 1 of the 1938 act have the purpose and effect of merging the two prior acts into the 1938 act, by which they were amended and re-enacted, and that the 1934 and 1935 statutes ceased to exist, the 1938 act having been substituted therefor. Mouton v. City of Lafayette, 130 La. 1064, 58 So. 883. See also Commonwealth v. Kenneson, 143 Mass. 418, 9 N.E. 761.

We therefore conclude that the sole and only remedy to plaintiff under the facts in this case is that contained in the provisions of the 1938 act, and that this act, insofar as plaintiff is concerned, is exclusive, and that plaintiff should have brought its suit within the terms and provisions thereof.

In Dupre et al. v. City of Opelousas, 161 La. 272, 108 So. 479, 481, certain taxpayers who had paid an eight-mill tax instead of a seven-mill tax instituted a suit for the recovery of the excess exacted of them and paid. In that case the court said:

"Obviously, the proper course for a taxpayer to pursue, under such circumstances, is to investigate the legality and constitutionality of a tax before he makes payment, and, if he finds that it is illegal or unconstitutional, and is not willing to pay it, then to make use of the means provided by law to prevent the enforcement of the tax."

In the instant case, the taxpayer, having failed to avail itself or make use of the means provided by law—that is, the remedy set forth in Act No. 330 of 1938—cannot recover.

Plaintiff in brief filed in this court contends that Act No. 330 of 1938 is entirely inapplicable inasmuch as it can constitutionally provide a remedy for recovery only where interstate commerce is not concerned; or, in other words, that the act is repugnant to the commerce

·clause of the Federal Constitution. This contention was not urged in the court below and was raised for the first time in this court, and is, in effect, an attack upon the constitutionality of the act. It is elementary that he who urges the unconstitutionality of a law must especially plead its unconstitutionality and show specifically wherein it is unconstitutional, and that issues not raised by the pleadings are not properly before this court and cannot be considered on appeal. State v. Great Atlantic & Pacific Tea Co., 190 La. 925, 183 So. 219; Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11.

Plaintiff also pleads the unconstitutionality of the ordinance under which the tax was collected, and cites numerous authorities in support of this contention, including the case of State v. Best & Co., 194 La. ·918, 195 So. 356. But, since we have concluded that plaintiff's sole and only remedy was provided by Act No. 330 of 1938, and ·since plaintiff did not comply with the ·provisions of this act by giving notice of its intention to file suit and by filing suit within a period of 30 days thereafter, it is unnecessary to pass upon the constitutionality of the ordinance.

It is our opinion that the exception of no cause or right of action was well founded and should have been sustained.

For the reasons assigned, the judgment appealed from is reversed and set ·aside, and it is now ordered that plaintiff's demands be rejected and its suit dismissed at its costs.

HIGGINS, J., takes no part.